Rudiger vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

of the trial court to the contrary was erroneous and must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint and to render judgment in favor of the defendant for costs to be taxed according to law.

RUDIGER, Administratrix, Respondent, vs. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*November 4 — November 22, 1898.*

*Railroads: Explosion causing death: Evidence: Exhibits: Improper remarks by counsel: Special verdict: Credibility of witnesses: Damages.*

1. In an action against a railroad company for causing the death of plaintiff's husband by the explosion and burning of an oil tank, a wooden model representing the place where the accident occurred, which purported to be made on a scale by a man who had never been on the ground, and from figures as to heights and distances, was admitted in evidence, though shown to be inaccurate. *Held* that, since maps and photographs and accurate measurements were also introduced, the error was harmless.

2. It was improper in such action to admit the testimony of a witness who was injured by the same accident, as to where he himself was standing at the time, which in no way tended to show where the deceased stood.

3. Improper remarks made by plaintiff's counsel, intended and calculated to excite and inflame the jury, charging that the defendant's witnesses were "ghouls" and "vultures," and had been "prowling among the cots in the hospital" where the injured were placed; that defendant's claim agent was tampering with plaintiff's witnesses; and that other witnesses were there, violating confidential relations, could not be rendered harmless by a mere direction to the jury to disregard them, but constitute sufficient ground for reversing a judgment in favor of the plaintiff.

Rudiger vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

4. For the court not to require a special finding as to a fact which it has a right to assume, is not error.

5. It appearing in this case that the railroad company established a temporary station near a gap in its right-of-way fence, east of the burning oil tank, the explosion of which caused the death of plaintiff's intestate, and that he had time to run some distance after the explosion and before being struck, *held,* that a request for a special finding as to whether the deceased was west of that gap in the fence at the time of the explosion should have been granted. It was not sufficiently covered by a question whether he was west of it when he received his injuries.

6. The testimony of a single witness whose statements are incredible and inconsistent and contradict a written statement made by him soon after the accident, is not sufficient to sustain a finding that the plaintiff's intestate was, when injured, outside of the gap in the fence, as against overwhelming evidence to the contrary.

7. A verdict of $4,000 damages, in an action by a widow sixty-four years of age for causing the death of her husband, a farmer sixty-five years of age, *held* to be excessive, where the evidence showed that the husband and a robust son who worked the farm with him jointly earned only about $800 per year.

8. The jury in such an action are at liberty, under sec. 4256, R. S. 1878, to give such damages as they shall deem fair and just in reference to the pecuniary injury sustained, yet the recovery in this case should be limited to such sum as, being put to interest, will each year, by adding a part of the principal to such interest, yield an amount sufficient to support the plaintiff during the time that the deceased would have lived to support her, and such other sum as the evidence shows there was reasonable expectation she would receive from his earnings.

APPEAL from a judgment of the circuit court for Dunn county: E. W. HELMS, Circuit Judge. *Reversed.*

The circumstances out of which the cause of action set out in the complaint arose are the same as those mentioned in *Conroy v. C., St. P., M. & O. R. Co.* 96 Wis. 243; *Chicago, St. P., M. & O. R. Co. v. Myers,* 80 Fed. Rep. 361; and *Chicago, St. P., M. & O. R. Co. v. Belliwith,* 83 Fed. Rep. 437. Early in the morning of September 15, 1894, a western-bound freight train on defendant's road was wrecked at a point in St. Croix county between Hammond and Roberts stations.

Several cars (one loaded with coke, two containing naphtha in metal tanks, one containing kerosene oil in a metal tank) and the caboose became separated from the rest of the train and derailed. The forward car, containing naphtha, caught fire and exploded soon after the wreck, setting fire to the remaining cars. The fire continued to burn for some hours, and until about 11 o'clock, when the tank .containing kerosene oil exploded, and threw the burning oil on plaintiff's intestate, causing injuries from which he died.

On the morning of that day, Mr. Rudiger, the decedent, purchased a ticket at St. Paul, and boarded one of defendant's passenger trains, bound for Menomonie, Wisconsin. The train arrived at the scene of the wreck about 10 o'clock, and was stopped some little distance west of the burning cars. A gap was opened in the right-of-way fence on the south side, some 258 feet west of the burning tank; and the passengers, together with the mail, express matter, and baggage, were transferred through the fields, south, to another gap in the fence, 256 feet east of the tank. The mail matter was deposited on the right of way, near the track, north and a few feet westerly of the west post of the east gap, and the express and baggage extended easterly for a distance of some forty feet or more. Mr. Rudiger followed the other passengers to the east gap. No specific directions were given the passengers as to where they should stay. The burning tank attracted considerable attention, and some of the passengers went westerly on the right of way, past the gap, toward the car. The fire was burning with great violence, producing a loud, roaring noise, with flames shooting up. The injury complained of occurred about an hour after the passenger train arrived. At the time of the explosion of the oil tank which caused the injuries to Mr. Rudiger, the great body of the passengers were standing around and easterly of the east gap. The plaintiff insists that at the time of the explosion Mr. Rudiger was standing

Rudiger vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

near the baggage, at a point a little east of the west post of
the gap; that when the tank exploded the burning oil was
thrown upon him, inflicting injuries which occasioned his
death. The location of Rudiger was denied by defendant,
and its testimony tended to show that he was some distance
west of the gap, towards the tank, on the right of way.

A special verdict was taken, in which the jury found, in sub-
stance, that the defendant was guilty of a want of ordinary
care in selecting the place it did for its temporary station,
which was the proximate cause of the injuries to Rudiger;
that Rudiger was at the temporary station at the time he
received his injuries, and not west of the gap; that he was
not guilty of any want of ordinary care which contributed
to his injuries; and that the plaintiff's loss was $4,000. A
motion to set aside the verdict was denied, and judgment
entered thereon. The defendant appeals. Defendant as-
signs error as to the admission of testimony, remarks of
counsel during the trial, imperfections in the verdict sub-
mitted, and excessive damages, all of which are noticed in
the opinion, and do not require statement.

For the appellant there was a brief by *L. K. Luse* and
*H. H. Hayden*, attorneys, and *Thomas Wilson*, of counsel, and
oral argument by *Mr. Luse*.

For the respondent there was a brief by *John R. Matthews*
and *Frawley, Bundy & Wilcox*, and oral argument by *C. T.
Bundy*.

BARDEEN, J. The errors assigned, and which we feel
called upon to consider, are as follows: (1) Improper admis-
sion of evidence; (2) improper remarks of counsel for plaint-
iff; (3) failure of the special verdict to cover all the issues
in the case; (4) refusal of the court to set aside the verdict.

1. Numerous objections were made to testimony offered
by the plaintiff, but only such as are herein mentioned are
deemed to be of sufficient importance to require notice.

A wooden model, purporting to have been made on a scale, and representing the track and right of way between the gaps in the fence, was presented by the plaintiff, and offered and received in evidence. This was objected to as being inaccurate and deceptive,— as giving a false idea of the *locus in quo*. The model was made by a person who had never been on the ground, and from figures as to heights and distances which were afterwards demonstrated to be little more than estimates. Except for the fact that maps and photographs of the scene were presented, and accurate measurements of distances and of the height of surrounding objects submitted, we should be inclined to hold that the model was so inaccurate as to be inadmissible. As it appears to us now, the evidence as to those matters was so definite and positive that we cannot believe the jury were deceived by the model.

One of the serious questions litigated on this trial was as to the exact location of Rudiger at the time of the explosion. The plaintiff insisted that he was standing by the baggage, east of the west post of the gap, while the defendant insisted that he was west of the gap. One Levi W. Myers was produced as a witness for plaintiff, and was asked the following questions: "Where were you standing at the time you received the injuries apparent on you, with reference to the east gap?" This was objected to, "unless the witness proposes to testify with regard to the injuries to Mr. Rudiger or to Mr. Rudiger's whereabouts." The objection was overruled, and the witness answered: "It is a question whether I was standing or running at the time I was struck. At the time I first noticed the explosion, I was standing just back of the mail matter. I mean southwest. *Q.* Where were you, with reference to an imaginary line drawn from the west line of the east gap to the mail matter? *A.* I think perhaps I was a few feet — maybe four or five feet — west of it." Witness was one of the few who were severely in-

Rudiger vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

jured by this explosion. He then had a suit pending against the defendant. The question in no way identified the witness with reference to Rudiger. At no place in his testimony does he attempt to locate Rudiger at the time of the explosion. His location was some distance west of where it is claimed Mr. Rudiger stood. His answers in no way tended to help the jury in the all-important inquiry as to Rudiger's position. On the contrary, they introduced a collateral issue, prejudicial to the defendant, and were sufficiently flagrant to come within the rule of condemnation laid down by this court in *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273.

2. During the trial, and in the course of the argument of the case to the jury, numerous exceptions were taken to the remarks of plaintiff's counsel in the presence of the jury deemed to be prejudicial to the defendant's interests. In some instances the court ruled the remarks improper, and directed the jury to disregard them, and in others simply passed them without ruling. The general tendency of the objectionable remarks was to inflame the minds of the jury, and to create sympathy for the plaintiff and prejudice and resentment toward the defendant. Some allowance must always be made for the zeal of counsel, but when it is evident that there is a design to stir up resentment in the minds of the jury, to arouse their passions and sympathies, and to discredit and prejudice the defendant's case, a mere ruling that the jury should disregard the objectionable remarks does not cure the evil. The circumstances of this accident were especially distressing and deplorable. Mr. Rudiger was so severely burned that death ensued. Several of the witnesses on the trial were dreadfully burned and disfigured. The conditions were such that insinuations of bad faith, charges that defendant's witnesses were "ghouls and "vultures" "prowling among the cots in the hospital," that defendant's claim agent was tampering with plaintiff's witnesses, and that other witnesses were there, violating confi-

Rudiger vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

dential relations, were well calculated to create unfavorable impressions, against which the defendant was powerless. The poison was there, and the ruling of the court would not be a sufficient antidote. Defendant's alleged negligence was not so palpable, nor the circumstances so desperate, as to warrant any such procedure. As remarked by the court in *Brown v. Swineford,* 44 Wis. 282: "Doubtless the circuit court can, as it did in this case, charge the jury to disregard all statements of fact not in evidence. But it is not at all certain that a jury will do so. Verdicts are too often found against evidence, and without evidence, to warrant so great a reliance on the discrimination of juries. . . . It is the duty and right of counsel to indulge in all fair argument in favor of the right of his client, but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. . . . And if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or a reversal in this court." See, also, *Friemark v. Rosenkrans,* 81 Wis. 359; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348. The nature of the case, and the circumstances surrounding the alleged accident, were such as to make the remarks of counsel referred to harmful in the extreme, continued as they were through the trial; and we should feel compelled to reverse the judgment on that ground alone, if other errors had not been deemed sufficient.

3. It is urged with great earnestness that the special verdict does not cover the controverted issues in the case, in that there is no finding as to the limits of the temporary station provided by the defendant. Resort must be had to the pleadings to discover the real points at issue. The complaint alleges that the passengers were conducted around the wreck, and directed to "remain and wait at the point on the right of way of defendant where the said mail, baggage,

and express had been deposited." The complaint further says that deceased went to the temporary station designated, and waited on the right of way *where said baggage had been deposited,* and while waiting at that place was injured. The answer meets these allegations by saying that defendant transferred the mail, express, and baggage to the east of the wreck, and deposited it on the right of way, 260 to 300 feet east of the burning tank, "the baggage being placed furthest east, and east of said east gap, and also directed the passengers, including plaintiff's intestate, to proceed to said point on the right of way where said baggage had been so deposited, and there wait the arrival of the train from the east." There is no proof in the case that defendant's employees gave any specific directions to passengers as to the exact *place* where they were to wait. The only proof on the subject is the inference to be drawn from the fact that they opened a gap in the fence, transferred the mail, express, and baggage and deposited the same on the right of way north of the gap, and conducted the passengers through the field and through the gap on to the right of way to the east.

Admitting for the purpose of the discussion that the complaint and answer form an issue as to the western limits' of the temporary station, there was no request that it be submitted to the jury, and it was not so submitted. Defendant prepared a list of twelve questions to be submitted as a special verdict, but it contains nothing bearing upon this point. There is nothing in the requests to charge the jury, handed up by the defendant, that calls attention to any such issue. One of such requests given by the court is as follows: "The complaint alleges that a temporary station was selected by the defendant's officers and servants, where the baggage, mail, and express was deposited on defendant's right of way, and that Leopold Rudiger, deceased, went to and remained at that place by direction of the defendant. Under this allegation the plaintiff cannot claim, nor are you at liberty

to find, that Mr. Rudiger was justified or excusable in going further west, towards the burning tank." Another request was to the effect that the defendant having opened gaps in the fence on each side of the wreck a considerable distance therefrom, it was notice to Rudiger that the space inside of the right of way between the gaps was either considered dangerous, or for some reason the company desired passengers to keep outside that space, and that if Rudiger went west of the east gap upon the right of way, toward the burning tank, and was injured, he assumed the risk. Upon his own motion, the court told the jury that no portion of the right of way west of the east gap could be considered to be a part of the temporary station. The evidence as to what was said to passengers, and as to what was done in opening the gaps and transferring them around the wreck, is not in dispute. Under the circumstances, the court had a right to assume that the western line of the temporary station was the westerly side of the gap, and it was not error not to require a finding on that point.

In view of the evidence offered, we think the court should have submitted one of the questions requested. Question 4 submitted reads, "Was Leopold Rudiger, *at the time of receiving his injuries*, west of the east gap?" Question 4 requested is, "Was Leopold Rudiger on the right of way west of the east gap *at the time of the explosion?*" All of the witnesses who testify on the subject say that a sufficient time elapsed between the warning of the explosion and the time when the fire reached them for them to have gone some little distance. It also appears that everybody ran. It might be that Rudiger was east of the gap when he received his injuries, and west of the gap when the explosion occurred. At any rate, the contest was so close that the question requested should have been submitted.

4. A vital question in this case was as to the location of Mr. Rudiger at the time of his injury. The jury found that

he was not west of the east gap. The only witness for plaintiff who testified as to his whereabouts about the time of the explosion was one J. W. Gardner, who claims he was seated on the right-of-way fence, immediately south of the burning tank. He says: "At the time I was thus seated on the fence, I saw Mr. Rudiger. He was down near where they unloaded some trunks,— where they unloaded the baggage. That was about north of the east gap; maybe a little east of it. . . . It was a minute and a half or two minutes from the time I saw Mr. Rudiger by the baggage to the time of the explosion,— a short time before." Without this testimony, a verdict for plaintiff could not stand for a moment. Let us consider the probability of the truth of this statement. He had never seen Mr. Rudiger before that day, and never saw him afterwards. About four or five minutes before the explosion he saw him with Mr. Belliwith at the culvert, about 140 feet east of the gap. He then went back to the wreck. At the time he saw deceased standing by the baggage, he was at least 250 feet distant. There were a large number of people there. The great mass of passengers were around the east gap, yet this witness was able to identify Mr. Rudiger from the number, and locate him near the baggage. In addition, the witness about two years after the accident readily identified Mr. Rudiger's photograph, which had been taken some sixteen years before the accident. Soon after the accident, Dr. Boothby attended witness and dressed his burns. To him witness stated that he was standing in the field, about a rod from the fence, at the time of the explosion. He afterwards signed a written statement to that effect. Witness denied ever making the admission to the doctor, and denied signing the written statement. His testimony is impeached by the surrounding circumstances, and is improbable on its face. But, as opposed to his statements, the overwhelming evidence of the defendant locates Mr. Rudiger some distance

west of the east gap at the time of the explosion. The testimony of Judge Dickey, Belliwith, Brooks, and Mrs. Patrick locates him several rods west of the gap. The undisputed testimony shows that neither the fence nor grass was burned east of the burning tank to a greater distance than 117 feet. Of forty or fifty persons standing around the east gap, not another one was severely burned. The great weight of the testimony, together with the probabilities of the case, are strongly with the defendant. A verdict so plainly against the preponderance of the evidence should not be permitted to stand.

The jury fixed the plaintiff's damages at $4,000. This is claimed to be excessive. Deceased was a farmer, sixty-five years of age, robust and healthy. The plaintiff was sixty-four. He had seven children living, all married. A son lived with him and worked on the farm. The product of their joint earnings was about $800 annually. No proof was given as to their expenses, or how much of the income from the farm was contributed to plaintiff's support. Neither was any testimony given as to the value of such support, or as to their domestic relations, or of any fact or circumstance upon which to base expectation of the widow's ultimately receiving a share of his earnings as his heir, other than that they were husband and wife and lived together. Decedent's expectation of life was between ten and eleven years. Under the statute (sec. 4256, R. S. 1878) the jury were at liberty to give "such damages, not exceeding five thousand dollars, as they shall deem fair and just in reference to the pecuniary injury resulting from such death to the relatives [in this case, to the widow] of the deceased." *Schadewald v. M., L. S. & W. R. Co.* 55 Wis. 569. In fixing such damages the jury should include the value of her support and protection by the deceased during the time he would probably have lived. They should also consider the addition that the earnings of deceased would probably have made to his property,

had he continued to live, and the reasonable expectation which plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings, as one of his heirs; and damages may be given with respect to that expectation being disappointed, and the probable loss resulting therefrom. *Castello v. Landwehr*, 28 Wis. 522; *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447; *Kaspari v. Marsh*, 74 Wis. 562. In *Regan v. C., M. & St. P. R. Co.* 51 Wis. 599, this court held that a complaint which failed to state facts showing pecuniary loss, present or prospective, resulting from the death, to the widow of deceased, was bad on demurrer. It was further stated that under this statute it was only for a pecuniary loss that the action is maintainable, and not for loss of society, or damages in the way of *solatium*. Not only must such issuable facts be stated, but, to warrant a recovery, there must be proof to sustain them. The jury are not warranted in giving damages not founded upon testimony, nor can they go beyond the measure of compensation for the injury. They cannot give damages founded on their fancy, or based upon visionary estimates of probabilities or chances. They must be confined to those damages which are capable of being measured by a pecuniary standard. *Cooper v. L. S. & M. S. R. Co.* 66 Mich. 271; *Balch v. G. R. & R. Co.* 67 Mich. 394. Tested by these rules, the recovery in this action cannot be supported. In all human probability the earning capacity of deceased would decrease as he advanced in years. The amount found by the jury would about cover his gross earnings during his expectancy of life, making no allowance for expenses of living and support in the meantime. The recovery should be limited to such sum as, being put to interest, will each year, by taking a part of the principal and adding to the interest, yield an amount sufficient for her support during the time deceased would probably have lived, together with such other sum as the evidence-

showed there was reasonable expectation she would receive from his earnings.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.