HAYES, Administrator, Respondent, vs. CHICAGO, MILWAU-
KEE & ST. PAUL RAILWAY COMPANY, Appellant.

*March 25—April 9, 1907.*

*Railroads: Negligence: Killing of brakeman between cars: Contribu-
tory negligence: Court and jury: Instructions: Excessive dam-
ages.*

1. In an action for the death of a brakeman who was crushed be-
tween two freight cars, the evidence is *held* sufficient to sustain
a verdict to the effect that the cars were detached and standing
still when the deceased went between them, and that the acci-
dent was caused by negligence of defendant's other employees
in backing one of the cars upon him.

2. An instruction to the effect that deceased was not guilty of con-
tributory negligence preventing a recovery if in performing his
work about the train he acted as the great mass of men act un-
der like or similar circumstances, is *held* proper when taken in
connection with the whole charge, the idea being clearly con-
veyed that he must have been doing his work in accordance
with instructions and as the great mass of men would act under
the same or similar circumstances in view of the duties which
he was to perform and the instructions which had been given.

3. An instruction that, in determining whether the deceased was
guilty of contributory negligence, his age, intelligence, and ex-
perience as a brakeman were to be taken into account, was
proper.

4. An instruction to the effect that if the jury found that a certain
employee gave the back-up signal while deceased was between
the cars, which was obeyed and the deceased thereby injured,
they might find the defendant negligent, is *held*, in view of the
evidence, not to have been prejudicially erroneous.

5. The whole subject of contributory negligence having been fully
and properly covered by the general charge, it was not error to
refuse a requested instruction to the effect that if deceased went
between the cars while they were still moving and was caught
between the couplings as described, as and when the cars
stopped, the verdict should be for defendant.

6. Such instruction was properly refused, also, because there was
evidence that deceased went between the cars just as they
stopped—that they came to a standstill within a foot, and that
thereafter one of them was backed upon him without warning.
Under such circumstances he could not be held guilty of con-
tributory negligence as a matter of law.

7. An award of $3,500 as damages for the death of a brakeman about eighteen years old who was earning $80 per month and whose parents, sixty-one and fifty-two years old respectively, were in poor health and largely dependent on him for support, is *held* not excessive.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

On January 2, 1905, Joseph L. Hayes, plaintiff's decedent, was killed at Sparta, Wisconsin, by being crushed between the drawbars of two freight cars. He was at the time of his death between eighteen and nineteen years of age, and head brakeman on the freight train which left La Crosse, Wisconsin, for the east about 5 o'clock and arrived at Sparta on the morning of the injury. The freight train upon which he was employed consisted of a long string of freight cars, the second and fourth of which from the engine were to be set out at Sparta, and the first and third were to go on with the train. While the train crew was switching for the purpose of setting out the two cars named and making up the main train, the deceased was crushed between two cars, and the main controverted question of fact is whether the cars were in motion when the deceased went between them and was injured, from which injuries he died.

The cars were equipped with a device for uncoupling, by the use of which the brakeman could by means of a lever on the side of the car uncouple without going between them. The cars were also supplied with a system of air brakes, which consisted of hose and pipes extending through the train, the hose being between the cars connecting in the form of a loop and coupling at the bottom of the loop below the drawbars. There were also what are known as "angle cocks" in the air pipes between the cars, to which the hose was attached, by means of which the air can be shut off or let on as required. The deceased was found caught between the drawbars of the second and third cars, and the contention on the part of the

defendant is that deceased was guilty of contributory negligence in going between the cars while they were in motion, and that defendant was not guilty of negligence. On the part of the plaintiff it is contended that deceased went between the second and third cars while they were standing still and about six feet apart, the third car being detached from the second; and that without any signal or warning the engine and two cars attached to it were backed upon deceased, in consequence of which he was crushed between the second and third cars.

The deceased left a father and mother, brothers, and a sister. The action was brought by plaintiff, as administrator, to recover $5,000 damages sustained by the death of Hayes. Motions on the part of defendant for nonsuit and directed verdict were denied. The case was submitted to the jury, and they rendered a general verdict in favor of the plaintiff for $3,500. Motion for new trial was denied, and judgment rendered for plaintiff on the verdict, from which this appeal was taken. It is claimed by appellant (1) that a verdict should have been directed for defendant, (2) that the court erred in instructing the jury and in refusing to instruct, and (3) that the damages are excessive.

For the appellant there was a brief by *Woodward & Lees,* attorneys, and *Chas. E. Vroman,* of counsel, and oral argument by *Mr. John B. Sanborn* and *Mr. Vroman.*

For the respondent there was a brief by *Morris & Hartwell* and *Winter & Esch,* and oral argument by *Frank Winter.*

KERWIN, J.   1. The main contention by appellant is that deceased was guilty of contributory negligence in going between the cars while they were in motion, and that the fact that they were in motion when he went between the cars was established as a matter of law. Conceding, as claimed by appellant, that deceased was instructed not to go between the cars while in motion for the purpose of performing his duties as brake-

man, and that suitable appliances were provided for such work, rendering it unnecessary to do so, it is by no means clear that it would be negligence *per se* for deceased to go between them, as testified to by some of the witnesses, when they were moving so slowly as to be practically at a standstill. It does not appear for what purpose he went between the cars, and we think an occasion might arise which would present a question for the jury whether negligence or not. But we do not find it necessary to pass upon the question here, because we think upon the evidence the question whether the cars were standing still when deceased went between them was for the jury. The case was squarely presented to the jury upon the issue as to whether or not the cars were standing still when deceased went between them, and while in such position the engine and two cars were backed against the third car, thereby crushing deceased. Other questions found by the jury respecting the right to recover are not questioned. So we reach the question of the sufficiency of the evidence to support the verdict upon the point whether the cars were standing still when deceased went between them and was injured by the negligence of the employees of defendant in backing the cars upon him.

The appellant's theory is that while the cars were in motion deceased went between the second and third cars attached to the engine for the purpose of closing the angle cocks on the air pipes and breaking the hose coupling, and that he was injured while the cars were in motion; that he should have done this work while the cars were standing still, and that the uncoupling should be done with the appliances provided for that purpose without going between the cars. There is testimony tending to show that after the fourth car was set off, or "spotted," the engine and the three remaining cars with deceased hanging on the side of the third car pulled east over the bridge switch, and that Hayes dropped off, turned the switch to the main line, and gave the signal to back up, which was imme-

diately obeyed, and that in this backing-up movement the
engine did not again fully stop until after Hayes had been
crushed between the second and third cars.   This evidence,
however, is in direct conflict with the evidence of Mrs. Flick-
iger and her daughter, who testified that they were on the
piazza of their residence, about ten rods from the place of
injury, and saw the accident and heard Hayes scream, and
that the cars had stopped and the second and third cars were
about six feet apart, Hayes between them fixing something on
the rear of the third car when the engine and two cars backed
upon him.   A vigorous attack is made upon the credibility of
this evidence by appellant on several grounds.   It is claimed
that the physical conditions surrounding the witnesses ren-
dered their testimony incredible and impossible.   This claim
is based mainly upon the assumption that the Flickigers could
not see the place where the injury occurred on account of a
billboard obstructing their view, and, further, that their testi-
mony was rendered incredible by other established facts and
evidence.   We shall not attempt to enter into a review of the
argument of counsel upon this question of fact at any con-
siderable length.   They make the point that the brakeman did
not hear the screams of Hayes, although but 100 feet from
him; that Mrs. Flickiger swore Hayes was facing the west, or
toward the third car, when he was crushed, while the testi-
mony conclusively shows that when found he was facing the
east; that both Mrs. Flickiger and her daughter, immediately
after they saw the cars backed upon Hayes and heard the
screams, went into the house and saw nothing further; that
they did not know Hayes; that doubtless their testimony re-
ferred to the time Long, another brakeman, coupled up the
cars about half an hour after Hayes was injured.   But it ap-
pears that their attention was called to Mr. Long at the trial
and they stated he was much shorter than Hayes.

It is true there are many facts and circumstances which
tend quite strongly to establish the position of the appellant to

the effect that the Flickigers may have been mistaken, and that instead of seeing deceased Hayes crushed they saw Long when he went between the cars to couple them about half an hour after the injury and Hayes had been removed from the scene of injury. But we do not think that it is by any means so conclusively established as to warrant this court in disturbing not only the findings of the jury upon the question, but of the court below as well, who tried the case, saw the witnesses upon the stand, and had opportunity to judge better of their credibility and of all the facts and circumstances surrounding the transaction than this court. So far as the evidence shows, the Flickigers were wholly disinterested witnesses, and if they were in position, as they claim they were, to see the deceased when the car was backed upon him, this court cannot disregard their evidence. Nor do we think the established facts were such as to render their testimony incredible. Whether the billboard was an obstruction or not depended entirely upon the location of the train. It may be that if it was located as claimed by appellant the billboard might have obstructed the view, but it by no means follows that the testimony is conclusive that it was so located. We think the evidence is ample to support a finding that the train was so located as not to prevent the Flickigers from seeing the point of injury from their position on the piazza, as testified to by them. Considerable stress is placed upon the fact that when Hayes was found he was facing the east, while the Flickigers testified that when they saw the car backed upon him he was facing west. It may well be that he was facing west and attending to something on the third car, and yet he may have been partially facing the drawbars, and instantly, when the car was backed upon him, turned toward it, and in that way was crushed between the cars with his face to the east. At any rate these questions, we think, were all for the jury. Just what movements Hayes made immediately before he was crushed do not appear, as Mrs. Flickiger does not say, but only saw the car backed upon him and heard him scream. So it is not at all

improbable that his face was turned to the west when she saw him as she testified to, and that almost instantly when the car backed upon him he turned towards it and was crushed between the drawbars, and found in the position testified to, facing the east.

But it is wholly unnecessary to discuss this question further, or prolong the opinion by the recital of testimony or discussion of probabilities or improbabilities claimed on either side. After a careful examination of the evidence we are well satisfied that there is ample evidence to support a verdict that the deceased went between the second and third cars when the third car was detached and the cars standing still, and that without any warning the agents of defendant backed the engine and two cars upon him, whereby he was crushed between the drawbars, which caused his death, and hence the court was right in refusing to nonsuit the plaintiff or direct a verdict in favor of the defendant.

2. It is also insisted that the court erred in its charge to the jury and in refusing to charge as requested by defendant. Exceptions were taken to the following:

"The court instructs you that if Joseph Hayes, in performing his work about the train at and before his death, acted as the great mass of men act under like or similar circumstances, then there was no such contributory negligence on the part of Joseph Hayes as would prevent a recovery in this action."

It is claimed that the court ignored all the evidence as to the manner in which the coupling and uncoupling of cars supplied with air and safety appliances should be done, and also the instruction given relative to Hayes's work. But we do not think the instruction susceptible of criticism when viewed in the light of the balance of the charge. We think the portion of the charge excepted to, when read with the whole charge, clearly conveyed the idea to the jury that Hayes must have been doing his work in accordance with instructions and as the great mass of men would act under the same or similar circumstances in view of the duties which he was to perform

and the instructions given in that regard in order to be free from negligence. It was wholly unnecessary to go into a detailed statement to the jury of what the same or similar circumstances referred to were. *Nass v. Schulz,* 105 Wis. 146, 150, 151, 81 N. W. 133; *Duthie v. Washburn,* 87 Wis. 231, 233, 58 N. W. 380; *Innes v. Milwaukee,* 96 Wis. 170, 174, 175, 70 N. W. 1064.

Exception is also taken to the instruction to the effect that in deciding whether Hayes was guilty of contributory negligence the jury will take into account "many other things, his age, intelligence, and experience as a brakeman," and also to the instruction to the effect that if they found from the evidence that Smith gave the back-up signal while Hayes was between the cars, which was obeyed and Hayes thereby hurt, the jury might find the defendant negligent. It is insisted that Smith was not near the cars when the accident happened, nor in sight of the fireman, who was at the time taking signals. It is very obvious that if the engine and cars were backed up upon the deceased, as there is evidence tending to show they were, it was done through the agency of some of the employees in charge of the train, and whether it was Smith or the fireman or the engineer is wholly immaterial. Besides, there are many facts and circumstances appearing in the record which strongly tend to show that Smith may have given the signal for the train to back up. In any event we think it clear that these instructions were not prejudicial.

Counsel also excepted to other portions of the charge respecting the instructions given by the court as to the burden of proof and the negligence of the defendant. But we think there is no reversible error in the charge in this regard.

The defendant requested the court to give the following instruction, which was refused:

"You are instructed that if you find from the evidence that the deceased went between the cars in question while they were still moving and was caught between the couplings as

described, as and when the cars stopped, your verdict must be for the defendant."

It is very plain from the evidence that this request was properly refused. Whether or not it would be negligence as matter of law for a brakeman under any circumstances to go between cars equipped as these were, when moving, is a very serious question, far-reaching in its consequences, and embodies a rule which should not be laid down except upon thorough presentation of all the facts. The record before us shows no such case. Moreover, the instruction was clearly not applicable to the evidence, and, besides, the whole subject of contributory negligence on the part of the deceased was fully and properly covered by the judge's charge. The request above quoted and refused might well have been understood by the jury to allow them to find for defendant even if deceased went between the cars just as they stopped, regardless of whether they were again moved upon him without signal or warning, and even though there was no risk whatever in going between the cars at the time deceased did so, and although such act was not in fact the proximate cause of the injury. The material question under the evidence was whether the engine and two cars were backed upon the deceased without any signal from Hayes or warning to him, and the jury were instructed, at the request of the defendant, that if the cars were not so backed down after coming to a stop their verdict must be for defendant. Whether this instruction, requested by defendant and given by the court, would have been sufficient to reverse had judgment gone for defendant, we need not stop to inquire. It was certainly a very favorable instruction to defendant. There is evidence that deceased went between the cars just as they stopped—that they came to a standstill within a foot after he entered the space between the cars. If this evidence be true, we think it clear that he was not guilty of contributory negligence as matter of law in going between them at the time and under such circumstances, in the absence of any show-

ing other than what was made in the case. And we think it equally clear that the contributory negligence of the deceased upon the evidence in the case was for the jury. *Curtis v. C. & N. W. R. Co.* 95 Wis. 460, 70 N. W. 665; *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554.

3. Error is assigned because the verdict is excessive, and upon this point we are cited by counsel for appellant to two cases in this court: *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292, 77 N. W. 169, and *Innes v. Milwaukee,* 103 Wis. 582, 79 N. W. 783. It is true that the verdict in this case is quite a substantial one in view of the facts of the case. The father, as administrator, brings this action. He is sixty-one years of age, in poor health, without property, and was largely dependent upon deceased for support. His wife is fifty-two years of age, is practically an invalid, and they have a crippled daughter dependent upon them for support. They also have surviving three other sons, one of whom is also a cripple, having lost the use of his arm. The deceased was the youngest son of plaintiff, being at the time of the injury about eighteen years and two months old, the other sons being of age. The deceased had not been emancipated, and his father looked to him for assistance, and from the established facts had reason to believe that deceased would continue to render him aid after he became of age. Deceased was earning $80 a month at the time of the injury, with prospects of advance in his wages. The earnings of the deceased until he arrived at majority belonged to the plaintiff, and, as will be seen, would aggregate a very substantial part of the amount of the verdict. Besides, the jury were justified upon the evidence in finding that the deceased would continue to assist his father after having arrived at majority, and were warranted in taking this into account in arriving at their verdict. *Bright v. Barnett & R. Co.* 88 Wis. 299, 60 N. W. 418; *Thompson v. Johnston Bros. Co.* 86 Wis. 576, 57 N. W. 298. We have carefully examined the cases cited by appellant and cannot discover that

they are applicable to the facts in this case. The question of whether the verdict is excessive was presented to the trial court on motion for new trial and fully considered, and held not excessive. Considerable deference is due to the judgment and discretion of the trial court in such matters. *Bright v. Barnett & R. Co., supra.* After careful examination of the evidence we are inclined to agree with the trial court that the verdict is not excessive.

We find no reversible error in the record, therefore conclude that the judgment should be affirmed.

*By the Court.*—Judgment of the court below is affirmed.

CASSODAY, C. J., took no part.