RYAN, Administratrix, Respondent, vs. OSHKOSH GAS LIGHT
COMPANY, Appellant.

*February 20—March 9, 1909.*

*Death caused by negligence: Defect in electric lighting wires: Suffi-
ciency of special verdict: Instructions to jury: Evidence: Ex-
amination of hostile witness: Discretion: Damages.*

1. In an action for death of one who was killed by coming in con-
   tact with a guy wire charged with electricity, the special ver-
   dict—submitting to the jury the questions whether defendant
   was negligent in permitting the guy wire to become so charged;
   whether such negligence was the proximate cause of the de-
   cedent's death; whether the primary wire which fed an electric
   light near by was displaced and in contact with other wires
   so as to render the guy wire dangerous; whether, if so, such
   condition had existed for such length of time that defendant,
   in the exercise of ordinary care, ought to have known and
   remedied the defect before the accident; whether the decedent
   was guilty of contributory negligence; and the amount of plaint-
   iff's damages—is *held* fairly to cover the issuable facts without
   further submission of more specific questions as to defendant's
   negligence. *Rowley v. C., M. & St. P. R. Co.* 135 Wis. 208, dis-
   tinguished.
2. The finding that the defect had existed for such length of time
   that defendant, in the exercise of ordinary care, ought to have
   known and remedied it, is *held* to be sustained by the evi-
   dence—showing, among other things, that on Friday a falling
   tree caused a displacement and considerable slack in the pri-
   mary wire carrying the high current; that on Saturday morn-
   ing defendant's employees attempted to repair the defect by
   merely taking up the slack at a point some distance therefrom
   without going to the guy post or to the pole carrying the pri-
   mary wire, the view of which from the point at which they
   worked was somewhat obstructed by intervening trees; and
   that the accident occurred on the following Monday.
3. The important question in such case was, not when the contact
   took place whereby the current passed into the guy wire, but
   when the wires became displaced so as to permit a contact to
   occur.
4. *Quære* whether, upon the facts of the case, defendant was not
   guilty of negligence as matter of law in failing to use some

proper appliance which, in the event of defect or contact of wires, would prevent the passage of the current to the guy wire.

5. Refusal to give requested instructions is not error where they are fairly covered by the general charge.

6. Independent of statute a party has the right to examine a hostile or adverse witness, and it is largely in the discretion of the trial court whether questions in the nature of cross-examination shall be allowed.

[7. Whether sec. 4068, Stats. (Laws of 1907, ch. 271),—providing that any agent or employee of a corporation which is a party may be examined upon the trial as if under cross-examination, at the instance of the adverse party,—is valid, not determined.]

8. In fixing a widow's damages for death of her husband the jury may include the value of her support and protection by him during the time he would probably have lived, and may consider the addition that his earnings would probably have made to his property, and her reasonable expectation of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs.

9. An award of $7,000 for death of plaintiff's husband, forty-six years old, a good business man, thrifty and industrious, who had accumulated an estate of $7,000, is held not excessive.

10. In an action for death of plaintiff's husband the admission of evidence as to the official position which he had held, and that at one time he had attended college to better qualify himself for business, was not error.

11. It appearing that deceased was running a truck farm, raising berries and fruits, and that it was a profitable business, it was not error to permit a witness to state what would be "the average annual earning from an acre of strawberries, fairly cultivated and raised in that vicinity." The objection that it had not been shown how deceased cultivated his berries, the variety he raised, or the character of his soil, etc., went rather to the weight of such testimony than to its competency.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This action was brought to recover damages for the pecuniary value of the life of the plaintiff's intestate, who was killed by an electric current charged to have been negligently permitted to pass over defendant's wires to a certain guy

wire with which intestate came in contact. The answer denied liability. The jury returned the following verdict:

"(1) Was the defendant guilty of negligence in permitting the said guy wire, at the point where the said Dennis H. Ryan came in contact therewith, to become charged with electricity? *A.* Yes.

"(2) If you answer the above question 'Yes,' then was such negligence the proximate cause of the injury and death of said Dennis Ryan? *A.* Yes.

"(3) Was the primary wire on the pole near the place of the accident displaced and in contact with other wires at the time and place of the accident so as to render the guy wire dangerous? *A.* Yes.

"(4) If you answer the question last above 'Yes,' then had such condition existed for such a length of time that the defendant and its officers, in the exercise of ordinary care and prudence, ought to have known of and remedied the same before the accident? *A.* Yes.

"(5) Was the injury to said Ryan which resulted in his death an accident the proximate cause of which the jury is unable to discover from the evidence? *A.* No.

"(6) Did a want of ordinary care and prudence on the part of said Dennis Ryan contribute to his injury and death? *A.* No.

"(7) If the plaintiff is entitled to recover, at what sum do you assess her damages? *A.* $7,000."

After denial of the several motions made by defendant the court rendered judgment in favor of the plaintiff upon the verdict, from which judgment this appeal was taken.

For the appellant there was a brief by *Doe & Ballhorn* and *Bouck & Hilton,* and oral argument by *J. B. Doe* and *John F. Kluwin.*

For the respondent there was a brief by *Doyle & Hardgrove,* and oral argument by *T. L. Doyle.*

KERWIN, J. At the time of the injury and for many years prior thereto the defendant was engaged in furnishing electricity to the city of Oshkosh and its inhabitants, and for

such purpose maintained poles, wires, and equipments in the streets. At the point where Regent street in said city connects with Northwestern avenue was maintained an arc lamp supported by a span wire, each end of which was attached to a pole about thirty feet from the ground. This lamp, which hung over the center of Northwestern avenue, was fastened to the span wire by a metal interlocking device, which was attached to a wire under the span wire and to the northwest corner pole and extended down the pole to within a few feet of the ground. On the south side of Northwestern avenue, between the sidewalk and driveway, was a guy post to which a wire supporting the south pole was fastened. Near the top of this pole the span and guy wires wound around the pole in such manner as to be in contact. The primary wire which fed the lamp carried 2,300 volts of electricity. The arc wires carried about 8,000 voltage. At the time of the accident the primary wire was found detached from the insulator and lying across the cross-arm against the pole and wire which fed the arc lamp. The guy post, which was about six feet high, stood thirty-five feet from the pole which supported the arc lamp, and the guy wire was fastened to this guy post at about three inches from the top. On the 29th day of July, 1907, the deceased was killed by a current of electricity which had escaped to the guy wire with which the deceased came in contact. A great many errors are assigned, but they may, so far as necessary to discussion, be grouped under a few heads.

1. The form of the special verdict is vigorously assailed, and particularly upon the authority of *Rowley v. C., M. & St. P. R. Co.* 135 Wis. 208, 115 N. W. 865. It is insisted that the issuable facts were not submitted, and that the court erred in refusing to submit to the jury the questions asked by the appellant. We have set out in the statement of facts the special verdict submitted, and think it fairly covered the issuable facts raised by the pleadings, namely, whether de-

fendant was guilty of negligence in permitting the guy wire with which the deceased came in contact to become so charged, whether the primary wire was displaced and in contact with other wires at the time of the accident so as to render the guy wire dangerous, and whether such condition had existed for such time that the defendant and its officers ought to have known of and remedied the defect; also, as to proximate cause, contributory negligence, and amount · of damages. These were the material issuable facts raised by the plead · ings. The instant case is clearly distinguishable from the *Rowley Case*. There the negligence complained of was the placing of a truck by defendant's employee on the station platform in such position that a passing train struck it and hurled it against the plaintiff, and the court refused to submit the questions asked covering this material controverted fact or any substitute therefor, and therefore the main fact was not found at all, except in the form of a general verdict. So the case is not controlling here.

2. It is also claimed that there was not sufficient evidence to support a verdict for plaintiff. This contention is based mainly upon the idea that it was not shown that the defect had existed a sufficient length of time before the injury to charge defendant with notice. We think this position untenable. That the dangerous current which killed Ryan escaped to the guy wire from the primary wire is without dispute and the negligence established if defendant had notice in time to have remedied the defect before the injury. We think this question was for the jury. The accident occurred July 29, 1907, about noon. On Friday, July 26, 1907, a tree which stood on the south side of Northwestern avenue near the pole to which the charged wire ran was cut, and in falling a branch struck the wires and broke one and injured others, causing slack in one or two of the wires. On the evening of that day, the 26th, notice was brought to an agent of the defendant, who examined the premises and found the wires

out of order and considerable slack in the primary wire which carried the high current. This displacement and defect of the primary wire was without doubt, under the evidence, caused by the tree falling upon the wires. On Saturday morning, July 27th, it appears from the evidence the agents of defendant attempted to repair the defect which was discovered Friday, but it is manifest that the question of whether they did properly remedy the defect was for the jury. If they did not, then the jury was justified in finding that the defect had existed such time as to render defendant liable for failure to repair. It would serve no useful purpose to go into a discussion of the evidence upon this proposition. The employees of defendant on Saturday took up the slack which they found in the wires, but did not go to the guy post or pole carrying the primary wire in question, but took up the slack at a point some distance therefrom and concluded that all was well.

It appears from the evidence that the view from the point where the men worked in taking up the slack to the pole in question was somewhat obstructed by thick foliage upon trees intervening, and that the repairing crew assumed that the taking up of the slack was all that was necessary and did not discover the defect at the pole from which the current escaped to the guy wire. In any event there is ample evidence to support a finding that the defect occurred on Friday and so remained until the injury Monday noon, which was sufficient to support the finding of the jury on this point. The jury found that the defendant negligently permitted the guy wire to be charged with a deadly current of electricity. This finding is supported by the establishment of the fact that the defect existed to the knowledge of the defendant for such length of time before the injury as to charge defendant with negligence in failure to repair. It is at least a serious question whether upon the facts of this case the defendant would not be guilty of negligence as matter of law in failing to

prevent the escape of the dangerous current to the guy wire by some proper appliance which in the event of defect or contact of wires would prevent the passage of the current to the guy wire. This danger, we understand, may be easily guarded against, as shown by the evidence, and that it is customary to so protect guy wires as to prevent dangerous currents escaping over them in such manner as to endanger the public. But we do not regard it necessary to put our decision upon that ground, as we regard the evidence ample to support the finding that the defect had existed a sufficient time to charge the defendant with notice thereof in time to have repaired it before the injury. The showing of negligence and proximate cause was ample to support the verdict under the rule laid down by the authorities in such case. *Wilbert v. Sheboygan L., P. & R. Co.* 129 Wis. 1, 106 N. W. 1058; *Nagle v. Hake,* 123 Wis. 256, 101 N. W. 409; *Home T. Co. v. Fields,* 150 Ala. 306, 43 South. 711; *Paine v. Electric I. & P. Co.* 64 App. Div. 477, 72 N. Y. Supp. 279; *Walters v. Denver C. E. L. Co.* 17 Colo. App. 192, 68 Pac. 117; *Newark E. L. & P. Co. v. Ruddy,* 62 N. J. Law, 505, 41 Atl. 712; *Wolpers v. New York & Q. E. L. & P. Co.* 91 App. Div. 424, 86 N. Y. Supp. 845; *Haynes v. Raleigh Gas Co.* 114 N. C. 203, 19 S. E. 344; *Wood v. Wilmington C. R. Co.* 5 Pennewill (Del.) 369, 64 Atl. 246; *Jacks v. Reeves,* 78 Ark. 426, 95 S. W. 781; *Norfolk R. & L. Co. v. Spratley,* 103 Va. 379, 49 S. E. 502.

3. Several errors are assigned on the charge and refusal to charge. We shall not go over them in detail. We are convinced that, where instructions asked and refused cover correct statements of the law as applicable to the facts of the case, they were covered by the charge given. Some of the requests to charge refused were improper and misleading. For example, the request to charge as to when the contact took place, and that if it took place as late as Monday, the 29th, they should answer the fourth question "No," was incorrect

and properly refused. The important question was, not when the contact in fact took place, but when the wires became displaced so as to suffer a contact to occur. It may well be that the insulator was removed and the wires so displaced by the falling of the tree upon them as to cause the contact later which produced the injury. Alleged errors in the charge are covered by several assignments of error argued by appellant. We think the charge fairly submitted the case to the jury and no prejudicial error was committed in that regard. We shall not prolong this opinion by a discussion of the many assigned errors under this head.

4. Error is assigned in permitting the examination of an employee of the defendant. It is insisted that the examination under sec. 4068, Stats. (1898), as amended by ch. 271, Laws of 1907, was error because this section as amended is void under the decision in *Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 113 N. W. 456. We do not find it necessary to consider the validity of the section referred to as amended. The plaintiff had a right to examine a hostile or adverse witness independent of the statute, and the form of questions in such case is largely within the discretion of the court, and we do not find that such discretion was abused.

5. Perhaps the most serious questions raised are those relating to the amount of the verdict and the evidence respecting damages. The jury awarded $7,000 damages. The plaintiff is the widow of deceased, and at the time of the accident was forty-one years of age and the deceased forty-six. Deceased was thrifty and industrious and provided well for plaintiff. Plaintiff and deceased were married in 1887. Deceased died intestate, leaving no children. At the time of his marriage he had only about $700, and at the time of his death $7,000. He operated a small farm and did some other business, and was a good business man. Quite broad discretion is allowed juries under the authorities in assessing damages in such cases. The court below refused to disturb

the verdict, and such fact is entitled to weight in such cases. *Hayes v. C., M. & St. P. R. Co.* 131 Wis. 399, 111 N. W. 471; *Bright v. Barnett & R. Co.* 88 Wis. 299, 60 N. W. 418. In fixing the amount of damages the jury was entitled to include the value of the plaintiff's support and protection by the deceased during the time he would probably have lived. They were also entitled to consider the addition that the earnings of deceased would probably have made to his property had he continued to live and the reasonable expectations which plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs. *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292, 77 N. W. 169; *Kaspari v. Marsh,* 74 Wis. 562, 43 N. W. 368; *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447, 24 N. W. 618; *Castello v. Landwehr,* 28 Wis. 522; *Leque v. Madison G. & E. Co.* 133 Wis. 547, 113 N. W. 946. Under the rule of damages established by this court in such cases we cannot say that the verdict is excessive.

6. Complaint is made respecting the admission of evidence on the question of damages, especially respecting the official position occupied by deceased, that at one time he attended college to better qualify himself for business, and principally in admitting evidence as to the average earning from crops, notably the following question:

"State, if you know, about what would be the average annual earning from an acre of strawberries, fairly cultivated, and raised in the vicinity and where Mr. Ryan lived."

This question was answered under objection. It appears from the evidence that deceased was running a truck farm, raising berries and small fruits, and that it was a profitable business, and the purpose of this line of examination was to show these facts as having a bearing upon the deceased's earnings. Also another question of similar character respecting what an acre of raspberries, fairly cultivated, would produce, was allowed to be answered under objection. The objec-

tion to these questions was based upon the fact that it was not shown how deceased cultivated his berries, the variety of berries raised, the character of the soil, cost of raising, preparing for market, and marketing. It does not appear that such objection went to the competency of the evidence, but rather to its weight. Some of the questions and answers allowed under objection, perhaps, were rather remote from the question in issue, but we do not think they can be said to have been prejudicial.

Others errors assigned which we have not specifically treated have all received careful consideration, and we find no prejudicial error in the record.

*By the Court.*—The judgment of the court below is affirmed.