ANNIE BROWN, Respondent, v. THE CONSOLIDA-
TED, LIGHT, POWER AND ICE CO., Appellant.

Kansas City Court of Appeals, April 6 and May 31, 1909.

1. ELECTRIC WIRES: Escaped Current: Burden of Proof: De-
fense: Unexplained Current. Where a plaintiff sues for dam-
ages for the death of her husband alleged to have been caused
by a current of electricity escaped from the defendant's wires
to the wires of another company, she has the burden of proof
to show the creation of such a natural conduit from the de-
fendant's wires to the other company's wires that the electric
fluid would naturally take, and the mere fact that at an earlier
hour than the time when the truant current was diverted
from the defendant's wires, there were manifestations in the
other company's wire of another foreign current, the source
of which is not explained by the evidence, except on the theory
that it was natural and not artificial, will not defeat her when
she has otherwise met the burden.

2. ———: ———: ———: Storm: Instruction: Pleadings. Where
the evidence without contradiction shows that prior to a storm,
the defendant's wires, poles and cross arms were in proper
condition, it is error to submit to the jury the question of
defendant's negligence in regard to such conditions though the
pleadings aver such negligence.

3 ———: ———: ———: ———: Negligence. The owner of
electric wires in a public street, must exercise the highest
degree of care to protect people using such streets, against
the risk of injury from such highly dangerous agencies. And
the failure to inspect its wires after an electric storm at 8 p. m.
until 6 a. m., is negligence, since after the storm it is reason-
able to expect damage to such wires resulting in probable
danger to persons using the street.

4. ———: ———: Storm: Negligence: Pleadings. The petition
is examined and held sufficiently to have presented the issue
of negligence in failing to inspect and repair electric lines af-
ter a storm.

5. ———: ———: ———: ———: Repair. The owner
of electric wires also has a right after a storm to a reasonable
time to inspect, and also to repair any damge found; and an
instruction should submit that issue to the jury.

6. ———: ———: ———: ———: Instruction. An instruction
set out in the opinion relating to the proper condition of the
defendant's wires prior to a storm is condemned, since it

amounts to a demurrer to the evidence withdrawing from the jury the negligence pleaded and supported by the evidence.

7. ———: ———: ———: ———: Another's Wires. When the owner of electric wires permits a current to escape from his wires to those of another resulting in rendering the latter's wires dangerous to travel on the public street, he has the right to cut and remove the other's wires, and cannot defend resulting injury on the ground that he had no right to abate the danger.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray*, Judge.

Reversed and remanded.

*Jno. A. Eaton, E. H. McVey* and *Dudley W. Eaton* for appellant.

(1) The court erred in giving in charge to the jury plaintiff's instruction numbered 1. (2) The instruction is a departure from the petition, in that the petition alleges one act of negligence, while the instruction permits recovery under a totally different charge of negligence. Haines v. Pearson, 100 Mo. App. 555; McLeland v. St. Louis Transit Co., 105 Mo. App. 473; Herbert v. Mound City Boot & Shoe Co., 90 Mo. App. 305. (3) The instruction is inconsistent with and in conflict with instruction numbered 3, given on the part of the defendant. State v. Cable, 117 Mo. 386; Goetz v. Railroad, 50 Mo. 422. (4) Conceding the negligence charged in the instruction to be in issue, yet it omits the essential element of reasonable time to repair. Hohstadt v. Daggs, 50 Mo. App. 240; Carder v. Primm, 60 Mo. App. 423; Baer v. Lisman, 85 Mo. App. 317. (5) Plaintiff's instruction numbered 1 given by the court was not warranted by the proof. (6) Under instruction numbered 3, the jury should have returned a verdict for the defendant. (7) The peremptory instruction requested by defendant at the close of plaintiff's evidence should have been given. Railroad v. Kavanaugh, 163 Mo. 58;

Heidt v. Railway, 130 Mo. 132; Downey v. Railway, 94 Mo. App. 137; Glascock v. Railway, 82 Mo. App. 146; Jeans v. Morrison, 99 Mo. App. 217; Holland v. Railway, 105 Mo. App. 123; Morelock v. Railway, 112 Mo. App. 645; Carter v. Railway, 156 Mo. 642; Cleary v. Transit Co., 108 Mo. App. 436; Lowenstein v. Railway, 110 Mo. App. 686; Chitty v. Railroad, 148 Mo. 64; Garven v. Railroad, 100 Mo. App. 617; Cunningham v. Journal Co., 95 Mo. App. 47; Politowitz v. Telephone Co., 115 Mo. App. 61; Hendley v. Refinery Co., 106 Mo. App. 20; Quigley v. Dambrick, 56 Mo. App. 192; Carroll v. Rapid Transit Co., 107 Mo. 653; Hardware & Iron Co. v. Mc-Claverty, 89 Mo. App. 154; Holmes v. Ledbetter, 95 Mo. App. 419; Clark v. Railway, 36 Mo. 202; Weaver v. Railway, 60 Mo. App. 207; Cogan v. Railway, 101 Mo. App. 179.

*George V. Farris* and *H. W. Currey* for respondent.

(1) Instruction numbered 1 is a clear and correct statement of the law as applied to the facts in question, and is consistent with, and responsive to, the issues, and more favorable to defendant than it was entitled to. Geisman v. Electric Co., 173 Mo. 673. (2) Instruction numbered 1 is not a departure from the petition and does not permit a recovery on a totally different cause of action. (3) There is no conflict or inconsistency between instruction numbered 1 given for plaintiff and number 3 given for defendant. (4) The element of a reasonable time to repair cannot be invoked in this case, for defendant company is bound to keep its wires in repair; Kelly v. Railroad, 105 Mo. App. 376, and Pavey v. Railroad, 85 Mo. App. 218, cited by appellant were both cases concerning the doctrine of master and servant; hence, an altogether different rule applies. All the cases hold that where an electrical company has wires and poles strung along a highway it is bound to see that the highway is

kept as safe as before the wires were put up. Gannon v. Gas Co., 145 Mo. 500; Geismann v. Light Co., 173 Mo. 658; Harrison v. Light Co., 195 Mo. 600. (5) Under all the evidence it was a question for the jury. There was ample evidence to sustain the plaintiff's case if believed by the jury. Gannon v. Gas Co., supra, is decisive of this point. See also Montgomery v. Railroad, 181 Mo. 504; Berry v. Railroad, 124 Mo. 245; Holloway v. Kansas City, 184 Mo. 29.

JOHNSON, J.—Plaintiff, the widow of Bertie Edgar Brown, deceased, alleges that her husband's death occurred while he was walking on the sidewalk on a public street in Webb City and was the result of contact with a fallen telephone wire which the negligence of defendant had caused to become charged with a deadly current of electricity and to remain where it had fallen to the street to menace the safety of pedestrians. Verdict and judgment were for plaintiff in the sum of four thousand dollars, and the cause is here on the appeal of defendant.

At about 5:15 o'clock in the morning of September 3, 1906, Mr. Brown started from his home in Webb City to go to a butcher shop on the east side of Allen street between Vine and Arch streets. He walked south on the sidewalk on the east side of Allen street, a paved thoroughfare, and had reached a point about twenty-five feet away from the shop when death overtook him. No one saw him receive his death stroke but, in a few moments thereafter, a passerby found him lying on the sidewalk unconscious and gasping for breath, and in another moment, he was dead. A seared wound across the left side of his face showed that he had just received a violent burn which the surroundings disclosed had been inflicted by electricity of high potentiality.

The Southwest Missouri Electric Railway Company was operating an electric street railroad along

137 App.—46

Allen street and in connection therewith maintained a private telephone system. A line of poles set near the east line of the street served the double purpose of carrying the wires which supported the trolley wire for the railroad and the two telephone wires which, constituted a metallic circuit, formed the necessary connection between the switchboard at the central office and the telephone instruments maintained at stations along the line. This telephone line crossed at right angles Arch and Vine streets, which ran east and west and the wires were set about two feet apart and about twenty-five feet above the sidewalk. Defendant was engaged in the business of furnishing electric light and power for public and private use in Webb City and the method it employed for transmitting currents of electricity was through overhead wires strung along the public streets. One of its lines ran along the south side of Vine street and, at the southeast corner of the intersection of that street with Allen street, a pole forty-five feet high supported an arc light suspended from the end of an arm which projected to the center of the square formed by the intersection of the streets. The wires which fed this lamp were carried on a cross arm attached to the pole and crossed Allen street at a height of from ten to fifteen feet above the telephone wires. They were insulated, each carried a current of more than five hundred volts and, so far as the direct evidence discloses, they were properly attached to the cross arm and were in a condition of good repair on the evening preceding the accident. The telephone pole which supported at the north end the section of the telephone wires crossed by defendant's said light wires was about twenty-five feet north of defendant's pole described, and the pole at the south end of that section was near the butcher shop, approximately one hundred and fifty feet south of Vine street and, perhaps, twenty feet south of the point where Mr. Brown fell. Five or six feet north of the latter point was a dead shade tree. It was discovered that during the

night preceding the accident, a fire had occurred in the top of defendant's pole at the place where the cross arm was attached, that the insulation had been burned off of the light wires and that the cross arm had been burned in two. This had caused the light wires to drop down to the telephone wires with the result that the west one of the latter wires had been burned until it had parted and had fallen to the street and one of the light wires rested on the east telephone wire with no insulation between them at the point of contact. The south end of the broken telephone wire remained attached to the pole near the butcher shop. Between that pole and the dead tree where it was caught in falling, it looped down to a height of not more than five feet above the sidewalk and the loose end of the wire extended from the north side of the tree to the street where it lay sputtering electric fire. Under normal conditions, the current carried on this wire was about twenty volts—not enough to endanger the safety of a person who might come in contact with it. It is evident from the conditions described by the witnesses that this wire which, beyond question, caused the death of Mr. Brown, was charged at the time with a foreign current of sufficient power instantly to kill a person. From the position of his body, it appears that Mr. Brown passed safely by the tree but accidently came in contact with the wire where it was looped. That he failed to discover its presence in time to avoid it was probably due to the fact that, owing to the early hour and the weather conditions, it was not easy to be seen. It is claimed by plaintiff that the vagrant current came from defendant's light wire, while defendant insists that it did not, or, at least, that the evidence fails to show that it did and in support of this contention, points to the fact that since there was no direct communication between the electric light wire and the wire with which the deceased came in contact, the inference that the current came from defendant's wire necessarily would be the result of mere speculation. In the absence of appliances

for the arresting of the progress of foreign currents of high power which might reach the telephone wires, the natural course for a current received from defendant's wire in the manner claimed by plaintiff would have been to travel over the contracting telephone wire to the switchboard and thence back over the other wire to the point where it had been grounded by falling to the street. That the current in the present instance did not pursue this course and result in burning out the switchboard was due to the installation of cut-off appliances which, at regular intervals along the line formed a connection between the two wires of a nature to permit the transmission along the regular channel of low currents, but which would throw over the cut-off to the other wire a current of greater potentiality than one hundred volts, thereby forming what is called a short circuit and preventing the destructive current from reaching and passing through the switchboard. One of such cut-offs connected the two wires a short distance south of the butcher shop, and it is the contention of plaintiff that the current which killed her husband was received from defendant's wire by the east telephone wire, traveled thereon south to this cut-off, thence across to the east wire and back north to the place where the broken end reached the ground. A rainstorm accompanied by pronounced electric disturbances occurred between eight o'clock and midnight of the preceding evening. At about 8:30 o'clock, an employee of defendant in charge of its office tested the lights throughout the city, by the aid of an apparatus for that purpose, and found them in proper condition. It is conceded that such test would have disclosed the existence of any serious leakage of electricity. No other tests were made that evening and at about twelve o'clock, the employee closed the office and went home. At about half past eleven o'clock and while the storm was in progress, street cars on the Allen street line were unable to run for a while, owing to an interference with the power and electric fire was noticed

among the telephone wires near the place where Brown afterwards met his death. At one o'clock, a witness who lived nearby discovered that the top of defendant's pole at the corner of Allen and Vine streets was afire. He telephoned the operator of the Bell Telephone Company who called up defendant's office and obtaining no response notified the fire department. Firemen went to the place, saw the nature of the fire and returned without doing anything.

The facts stated are undisputed in essential particulars. It is alleged in the petition "that the defendant on the 2nd and 3rd days of September, 1906, negligently permitted the insulage to be burned off of its wires at the intersection of Vine and Allen streets in said city and negligently permitted its wires on said Vine and Allen streets to get out of repair and thereby cause its, the said defendant's wire to burn at said intersection of Vine and Allen streets by which said negligence the posts and arms holding and supporting defendant's said wire were burned off, and the defendant's said wire fell down upon the wires of the Southwest Missouri Railway Company, used for telephoning as aforesaid, causing the said wires to sag down or break and to come near enough to the ground on said Allen street to permit the persons traveling thereon to come in contact therewith, which said wire of the said street car company was charged with a dangerous and deadly voltage of electricity from the defendant's wire, and, by reason of said negligence and all of the negligence herein charged, the said defendant's wire came in contact with the telephone wire of the said railway company, and by reason whereof the cross arm holding the defendant light company's wire was broken off and fell down upon the said telephone wire of the said street railway company and the wire of the said railway company was, by reason of all said negligence, broken, and fell down and upon said Allen street and the part thereof designed for foot travelers, and the wire so fallen laid against the wire

and wires of the defendant light company, which said defendant had negligently failed to keep insulated and which was so negligently maintained as to render it certain that volts of electricity would be communicated to any wire coming in contact with them or any thereof; and the defendant knew on the 2nd day of September, 1906, or by the exercise of that degree of care required of it, should have known that said telephone wire of said railway company would be by it burned in two and fall to the ground and would be so charged with electricity by contact with defendant light company's wire, and render it dangerous to the life of pedestrians; and negligently failed to take any precautions to prevent said wire from falling or to prevent injury to persons by electricity communicated by defendant's wire after it had fallen; and said fallen wire of said street railway company was kept charged with a heavy voltage of electricity by contact with the wires of defendant; but said defendant negligently failed to take any precautions to prevent said wire from falling or to prevent persons from being injured thereby or by electricity communicated by and through defendant's wires; and said defendant negligently suffered said wire of said street railway company to be and remain on the said street charged with a voltage of electricity from defendant's wire sufficient to cause death to any person coming in contact therewith from ten o'clock p. m., September 2, 1906, to six o'clock a. m., September 3, 1906."

At the conclusion of the evidence, the court refused defendant's request for an instruction peremptorily directing a verdict in its favor and submitted the cause to the jury on the issue defined in the first instruction given at the instance of plaintiff as follows:

"The court instructs the jury that if you find from the evidence that on or about the 3rd day of September, 1906, the Southwest Missouri Street Railway Company, with the knowledge of the defendant company, was maintaining a wire or wires used for telephone strung

on poles on and along the east side of Allen street in Webb City, and that the defendant company also maintained its wires strung on poles on and along Vine street across Allen street, and that at the crossing of said Allen and Vine streets the wires of said street railway company passed under the wires of the defendant company so maintained on Vine street, and shall find that the wires of defendant company so maintained on Vine street were kept charged with electricity of sufficient voltage to kill a person coming in contact therewith and that on the night of September 2nd, or early morning of September 3, 1906, the wires of the defendant company began burning at the point where said wires of defendant company and said street railway company crossed on said Vine street, and that the pole and arms used to sustain defendant company's wires were burned so that said arms fell down on the wires of said street car company so that the insulage of the defendant company's wires burned off at that point and the defendant company's wires with the insulage so burned off came in contact with the said telephone wire, and that the said telephone wire sagged down or was broken and laid on or immediately above the sidewalk on said Allen street and in so close proximity to said sidewalk as to come in contact with persons lawfully traveling thereon, and shall find that said wire so fallen or sagged down on said sidewalk was charged with a voltage of electricity communicated to it by the defendant's wires at the point where the insulage was burned off, if you find it was burned off, and shall find that said fallen wire so charged with a deadly voltage of electricity laid upon or immediately swung above the said sidewalk for a space of time sufficient to enable defendant by the use and exercise of a high degree of care and skill which may be used under the same and similar circumstances, to have known that the insulage was burned off of its wire at said point and that the arm supporting its wires at the said crossing of Vine and

Allen street had fallen down on the wires of said street car company and laid upon the wires of the said street car company at the point where the insulage had been burned off and to have known by the exercise of such care that said wire of said defendant company so charged with electricity from its wires lay upon or swung immediately above said sidewalk on said Allen street, and in such position as to cause the death of one coming in contact with said wire, then you are authorized to find that the defendant was guilty of negligence in permitting said wire of said street railway company to be on the sidewalk in said Allen street charged with electricity communicated to it from the wire of the defendant company; and if you shall further find from the evidence plaintiff's husband, without fault on his part and while being rightfully upon said sidewalk came in contact with said fallen wire, and was thereby killed, then your finding will be for the plaintiff."

In the instructions given on behalf of defendant, the court charged the jury, in part, as follows:

"If the jury believe from the evidence in this case that at and prior to the burning of the cross arm upon defendant's pole, its wires were properly insulated and that the cross arm of said pole was set fire by some means other than the act or omission of the defendant and the insulation was burned off by said fire, you cannot find that it resulted from the negligence of the defendant and your verdict should be for the defendant."

The argument made by defendant may be condensed into five leading propositions, viz: (1) The evidence fails to sustain the contention of plaintiff that her husband's death was caused by electricity communicated from defendant's wire to the telephone wires. (2) It does not support the allegation that the contact between the wires which originated during the preceding night was the result of any defect in defendant's wires, pole or cross arm, but does disclose affirmatively that the damage to these appliances was due to an act of God or

to some cause beyond the control of defendant. (3) The facts adduced do not tend to accuse defendant of negligence in failing to discover and repair the defect during the period that elapsed between its origin and the accident. (4) Should these propositions be rejected, still the judgment should not be permitted to stand since the petition states with particularity the specific acts of negligence constituting the cause of action and the only act of negligence, if any, supported by the evidence and submitted in the instructions is outside the scope of those pleaded. (5) The instructions of plaintiff are erroneous in this particular: In submitting to the jury the issue of defendant's negligence in failing to discover the defect and consequent danger to pedestrians on the street, the jury were not told that defendant was entitled to a reasonable time in which to remove the danger after it should have known of its existence.

The first two of the foregoing propositions will be discussed together. The nature, characteristics and apparent vagaries of electricity by no means are perfectly understood in the science of the present day, but it is well known that a current of electricity will travel in a circuit to reach its antipodal pole, will follow the line of least resistance and, when not closely confined to its prescribed course by insulation, will overflow into and appropriate other channels of easy travel with which it may come in contact. The fact that Mr. Brown was killed instantly by touching the severed and fallen telephone wire shows beyond question that his body became a part of the circuit over which a current of intense force passed in traveling to its attractive point. That current was an alien to that channel and may be likened to an escaped wild beast running at large. Tracing back from the body of its victim, its trail easily may be followed, in the light of the facts adduced by plaintiff, to the place where it found release from confinement. First, we are led south over the death dealing wire to the cutoff, an appliance specially designed to restrict the range

of an invading current to a short circuit: thence across to the companion telephone wire and thence north over it to the pole of defendant, where it was found to be connected with defendant's highly charged wire and with no insulation between them. We do not seriously regard the contention of defendant that the destructive current must have come from the trolley wire of the Street Railway Company. No connection, direct or remote, was shown to exist between these wires. The fact, that the street cars were stopped during the storm prevailing interfered in some way, not disclosed, with the current that served as the power to run the cars. And the fact that electric fire appeared among the telephone wires while the cars were stopped, in the absence of a showing of any defects resulting from the construction or ill repair of those wires and their appurtenances, can lead to no other reasonable conclusion than that lightning had found its way on those wires—perhaps the same bolt that set defendant's pole afire. We are not holding that these facts are wholly worthless from an evidentiary standpoint. The jury were entitled to consider them in solving the issue of whether the fatal current was transmitted from defendant's wire or came from some other quarter, but we do hold that they do not so mystify the situation as to compel us to say, as a matter of law, that the source of the current was made by the evidence a matter of mere conjecture and, therefore, is not presented as a fact of definite ascertainment. In showing the creation by the crossing of the light and telephone wires of a natural conduit for the electric fluid which its laws, in all reason, would prompt it to take, plaintiff sustained the burden and should not be defeated by the mere fact that at an earlier hour than the time when this current was diverted from defendant's wire, there were manifestations of the presence on the telephone wires of another foreign current, the source of which is not explained by the evidence, except on the theory that it was natural and not artificial. Under such

circumstances, to say that the lethal shock must have come from the trolley wire, would be to give predominance in law to an inference largely drawn from surmise and speculation over one naturally and logically following directly from its evidentiary facts.

All of the direct evidence shows that immediately before the storm, defendant's pole, wires and cross arm were in their proper place, had been faultlessly constructed, were in good repair, and were so far above the telephone wires (which were also in first class condition), that contact between them could be brought about only by some disaster of a nature not to be anticipated nor averted by human skill and foresight. The circumstantial evidence introduced by plaintiff demonstrates beyond peradventure that defendant then was not in fault in any particular, no matter by what standard of care its conduct may be measured. We concede the rule announced by the Supreme Court in Gannon v. Gas Co., 145 Mo. 502, which applied to the facts before us would compel us to hold that, under proper pleadings, plaintiff, to make out a prima-facie case of negligence against defendant, would be required to prove only the facts that her husband was killed by a shock of electricity communicated by defendant's wire to that which he encountered and that the burden of proof then would devolve on defendant to establish the fact that such transmission had not resulted from its negligence. But it must be borne in mind that in all cases including those where it is proper to apply the doctrine of *res ipsa loquitur,* the burden of establishing the ultimate fact of negligence abides with the plaintiff to the end of the case, and the sole function of the doctrine is to raise a prima-facie presumption of negligence from a given state of facts which will become conclusive if not rebutted by opposing evidence. Where the evidence offered by the defendant tends to contradict such presumption, it was held in the Gannon case that an issue of fact is presented to go to the jury, but where, as in the present case, the evidence

of both parties disproves the allegation of negligence, the presumption is overthrown and the court should declare as a matter of law that the plaintiff has failed to sustain his burden.

Guided by these principles, we do not hesitate to say that the evidence wholly fails to support the charge of negligence on the part of defendant in existence prior to the storm. With the fact conceded in effect by all of the witnesses, that the pole, wires and cross arm were in good condition, the inference that they were not in good condition, springing as it must from the bare fact that the cross arm burned and let the wires fall, could exist only in flat opposition to the testimony of the witnesses and the plain physical facts of the situation. Since the evidence conclusively negatives the allegation of the existence of such negligence, that issue, raised by the pleadings alone, should not have been submitted to the jury as one of fact and the instructions given must be condemned for presenting it.

Passing to the third proposition, the facts in proof, do strongly tend to accuse defendant of negligence in failing to discover the damage wrought to its property by the storm and to remove the dangerous current from accessibility to the telephone wire before plaintiff's husband, while lawfully using the street came within its range. The law imposed on defendant the duty of exercising the highest degree of care to protect the people using the public streets against the risk of injury from the highly dangerous agency it transmitted over them. As we observed in Winkelman v. Electric Light Co., 110 Mo. App. 184, the utmost care in the conduct of that business in only reasonably care. Knowing, as it did of the occurrence of a severe electrical storm and of the likelihood of damage to its poles and wires being inflicted by lightning, it appears to be a reasonable conclusion that defendant was negligent in making no test after 8:30 o'clock in the evening to ascertain if any

trouble to the lines had been caused by the storm and in closing its office at midnight.

Certainly it is not unreasonable to say that an ordinarily careful and prudent person in charge of defendant's business, while exercising the highest degree of care, would have bethought him to make the test, which he could have made without leaving his office, and not to close his office until the natural disturbances had ceased and all danger from their possible after effects had passed. Plaintiff was entitled to go to the jury on the issue of whether the conduct of defendant in this respect measured up to the standard of care imposed by law.

As to the fourth point, we are of opinion that the averments of the petition are broad enough to include the act of negligence last discussed. In charging that "defendant negligently suffered said wire of said street railway company to be and remain on the said street charged with a voltage of electricity from defendant's wire sufficient to cause death to any person coming in contact therewith from 10:00 o'clock p. m., September 2, 1906, to 6:00 o'clock a. m., September 3, 1906," defendant was distinctly notified to prepare to meet the issue of negligence occurring during the time stated. That issue, therefore, is within the scope of the petition.

The views expressed necessitate the conclusion that no error was committed in overruling the demurrer to the evidence.

The fifth proposition is meritorious. In the performance of its duty to exercise the highest degree of care, defendant was entitled to a reasonable opportunity to discover and locate the short circuit and then to be allowed a reasonable time while employing the greatest diligence to recapture or render innocuous the truant current. The instructions of plaintiff omitted the last mentioned element from the hypothesis and in so doing are erroneous. Plaintiff relies on the Gannon case to justify the omission but when rightly construed and ap-

plied to the particular facts under consideration, no principle announced in that case is found to be at variance with what we have said.

As the case must be remanded for another trial on account of the errors noted, it is proper to state that the instruction given at the request of defendant above quoted is not in harmony with the views expressed. That instruction, in effect, directed a verdict for •defendant should the jury find that the pole, wires and cross arm were in a proper state of construction and repair when the storm began and that the damage to them was caused by an act of God or other cause beyond the control of defendant, notwithstanding they further might believe that sufficient time had elapsed between the infliction of the damage and the death of Mr. Brown for defendant, in the exercise of due care, to have discovered the damage and removed the danger from the street. The vice of the instruction lies in its attempt to withdraw from the consideration of the jury the only act of negligence pleaded which finds support in the evidence. Practically, it is equivalent to a demurrer to the evidence and, for the reasons appearing in our discussion of the questions arising on the demurrer, should not have been given.

There is no merit in the suggestion of defendant that in any event it should not be pronounced negligent for failing to remove the danger by cutting the fallen telephone wire, the property of the Railway Company, over which defendant had no control. On finding that wire appropriated by its escaped current and thereby converted into an instrument of danger to pedestrians, defendant would have had the right to cut and remove it if that were the quickest and most practical method of abating the danger. Exigent demands of human safety override considerations of mere property rights.

The judgment is reversed and the cause remanded. All concur.