## M. S. WILHITE, Respondent, v. CITY OF HUNTSVILLE, Appellant.

### Kansas City Court of Appeals, November 25, 1912.

1. **NEGLIGENCE: Electricity.** Plaintiff's horse was killed while going out of a livery stable into a public street when it came in contact with a broken telephone wire which had fallen down and crossed a heavily charged electric light wire at a place where it had been spliced some time before and left uninsulated, causing the telephone wire to become charged with a deadly current. A heavy rain and sleet storm raged through the night of the injury, and the telephone and electric wires became encrusted with a thick heavy coating of ice. *Held,* that the demurrer to the evidence was properly overruled.

2. ————: ————: **Degree of Care.** The owner of an electric light plant, in the prosecution of its business of carrying high and dangerous currents of electricity over the public streets, is not an insurer of the safety of persons lawfully using the streets. but owed them the duty of the exercise of the highest degree of care to safeguard them and their property against vagrant currents escaping from its wires.

3. ———: ———: Severe Storms. In the exercise of the degree of care imposed by law, the defendant in the construction and maintenance of its lines was bound to anticipate the probable results of severe storms and to employ reasonable prudence and foresight to guard against the dangerous possibilities of such storms.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*E. J. Howard* for appellant.

The defendant, not being responsible for the contact of the wires, the law is that there is no negligence on its part unless it had a reasonable time after the dangerous act was committed, or the dangerous situation created, in which to discover the danger, and obviate its probable consequences. Clonts v. Gas Light Co., 144 Mo. App. 582; Frauenthal v. Gas Light Co., 67 Mo. App. 1; Abbott v. Mining Co., 112 Mo. App. 550; Dodge v. Coal & Coke Co., 115 Mo. App. 601; Hach v. Railroad, 117 Mo. App. 11; Kelly v. Railroad, 105 Mo. App. 365. The plaintiff, having alleged specific acts of negligence, had the duty of proving the acts as alleged, or his cause of action fails. Hogan v. Railroad, 150 Mo. 36; Chitty v. Railroad, 148 Mo. 64; Curren v. Railroad, 86 Mo. 62; Bohn v. Railroad, 106 Mo. 429; Feed & Fuel Co. v. Railroad, 129 Mo. App. 498.

*Aubrey R. Hammett* for respondent.

JOHNSON, J.—Plaintiff sued the city of Huntsville, a city of the third class, to recover damages for the loss of a horse which he alleges was killed by the negligence of defendant. The cause is before us on the appeal of defendant from a judgment recovered by plaintiff in the circuit court.

The horse was killed about 5:30 a. m. January 14, 1911, while being driven into a public street in Huntsville from a livery barn owned and operated by plaintiff in that city. A pole line carrying both tele- phone and electric light wires ran along the street in front of the barn and the entrance to the barn was about midway in the space between two of the poles. The telephone wires were a part of a telephone sys- tem operated by a private corporation and the elec- tric light wires were owned and operated by defend- ant as a part of its municipal lighting system. The telephone wires were about seven feet above the elec- tric light wires, and, being employed to carry only low and harmless currents of electricity, were uninsulated. The electric light wires carried a high and deadly cur- rent and were insulated.

Sometime before the night in question one of these wires had been spliced at a point almost op- posite the west side of the entrance to the barn and there was no insulation on the wire in a space of four or five inches at the place of the splice. It is a fair conclusion from the fact and circumstances detailed in the evidence of plaintiff that the bare place had existed from the time of the splicing of the wire by defendant until the time of the injury. A heavy rain and sleet storm raged throughout the night of the in- jury and encrusted telephone and electric light wires with a thick, heavy coating of ice. One of the tele- phone wires in front of the barn broke under its bur- den of ice and one of its ends fell to the street in front of the barn. The wire crossed the electric light wire we have described and remained in contact with that wire at the place where there was no insulation with the result that the electric light current was short- circuited by the broken and hanging telephone wire and was grounded at a point nearly opposite the west side of the barn entrance. The breaking of the tele-

phone wire occurred during the storm and the presence of the loose wire in the street was first observed by a pedestrian about three hours before the injury. It appears that the agents and servants of defendant made no effort during the night to discover and repair dangerous defects caused by the storm which was very severe and of a nature especially harmful to overhead wires; and, further the evidence discloses that defendant had not equipped its power house with appliances commonly installed and used in such plants for detecting short circuits and material losses of electricity. A servant of plaintiff who drove the horse out of the barn had been warned by another servant to look out for a sagging wire to the right of the entrance and, heeding the warning, turned the horse to the left on emerging from the door. The night was very dark and the driver could not see the fallen wire. The horse stepped on it with one of his forefeet and received a shock that threw him down. Defendant endeavored to show that the wire became wrapped around the horse's leg and that the struggles of the animal were sufficient to tear off the insulation of the electric light wire at the place of contact between the two wires but the witnesses for plaintiff say that the horse did not struggle and was killed almost instantly.

As we view the evidence the issue of whether the insulation was removed from the place of the splice in the wire at the time the wire was strung or last repaired by defendant or was removed by the chafing of the telephone wire caused by the death struggles of the horse is a debatable issue of fact, the solution of which was properly left to the jury and in passing on the demurrer to the evidence, we shall adopt the conclusion that the servants of defendant who spliced the wire left it bare of insulation at that place.

The petition alleges three grounds of negligence,

viz.: First, the failure of defendant to maintain insulation on the electric light wire at the place described; second, the failure of the servants of defendant to exercise proper care in the inspection of the system during the night of the storm to discover dangerous defects in its lines produced by the storm and to protect persons and domestic animals rightfully on the public streets from their injurious consequences; and, third, the failure of defendant to equip its plant with appliances for detecting the existence of short circuits and truant currents.

The answer traverses the several charges of negligence and pleads contributory negligence on the part of the driver of the horse.

The only questions before us of serious moment are those arising from the demurrer to the evidence which defendant argues should have been given. Defendant, in the prosecution of its business of carrying high and dangerous currents of electricity over the public streets was not an insurer of the safety of persons lawfully using the streets but owed them the duty of the exercise of the highest degree of care to safeguard them and their property against the assaults of vagrant currents escaping from its wires. This duty may be said to be composed of two main ingredients. First, care in keeping a force so subtle and dangerous confined to its prescribed course and, second, reasonable care, which in such business means the highest care, to discover as quickly as the circumstances of the given case will permit, the escape of a deadly current from captivity and to move with reasonable diligence in the performance of the task of reducing the escaped foe to harmlessness in order that the safety of the innocent wayfarer and his beast may not be imperilled. [Geismann v. Electric Light Co., 173 Mo. 564; Winkelman v. Light Co., 110 Mo. App. 284; Brown v. Light Co., 137 Mo. App. 718; Good-

win v. Telephone Co., 157 Mo. App. 596; Freeman v. Telephone Co., 160 Mo. App. 271.]

In the exercise of the degree of care imposed on it by the rules just mentioned defendant in the construction and maintenance of its lines was bound to anticipate the probable results of severe storms and to employ reasonable prudence and foresight to guard against the dangerous possibilities of such storms. ''Liability for negligence is measured by the consequences that could reasonably be anticipated to follow from the negligent act.'' [Strack v. Telephone Co., 216 Mo. 601.] Knowing that telephone wires were strung on the pole line above its own high power wires and that such wires were likely to break under the strain and stress of a severe sleet storm, defendant should have anticipated the falling and grounding of a telephone wire across and in contact with its own wires as a natural result of a storm of such character and was negligent in leaving an uninsulated place in its wire which, if brought into contact with a grounded telephone wire would short circuit the high power current and carry it to the public street to menace the safety of people and domestic animals lawfully upon the street. The suggestion that, owing to the icy condition of the wires and the ground, insulation would not have prevented the escape of electricity through the grounded telephone wire cannot be allowed to excuse defendant as a matter of law from liability for the injury. That argument and the evidence on which it is based relates to the subject of proximate cause and merely raises an issue of fact with the evidence of plaintiff which tends to show that the injury could not and would not have occurred had defendant's wire been properly insulated at the point of contact with the telephone wire. The jury were entitled to infer that the negligence of defendant in

maintaining an uninsulated wire was the proximate cause of the injury.

These considerations compel the conclusion that the learned trial judge did not err in overruling the demurrer to the evidence and we do not deem it necessary to discuss the remaining grounds of negligence on which, in his petition, plaintiff bases a right to recover. We find the issues were fairly tried and submitted to the jury and accordingly the judgment is affirmed.

All concur.