NAGLE, by guardian *ad litem,* Respondent, vs. HAKE, Appellant.

*October 22—November 15, 1904.*

*Electricity: Personal injuries: Evidence: Actionable negligence:· Proximate cause: Cause of action: Compromise and settlement:· Custom and usage: Witnesses: Appeal and error: Presumptions: Infants: Parent and child: Negligence of the parent: Cross- examination: Instructions to jury.*

1. In an action for personal injuries to an infant alleged to have· been occasioned by defendant's negligence in leaving within· the reach of such child a wire, in such position that it came in contact with a heavily charged electric wire, the evidence; stated in the opinion, is *held* to show that defendant was guilty of a negligent act, from which an injury to another was to be· anticipated as a natural and probable result.

2. In an action by an infant for personal injuries, originally commenced against two defendants, one of the defendants paid a· sum in settlement of the damages claimed by the father, with an understanding that the action should be dismissed as to,

Nagle v. Hake, 123 Wis. 256.

that defendant, which was done. There was no release given by the plaintiff for the damages suffered by him, nor was any money paid or agreed to be paid him by or on behalf of such defendant for such a release. The dismissal was without prejudice,. and there was nothing to prevent another action being begun. *Held*, that it was competent for the father to settle his own individual claim for damages on account of his son's disablement, and that fact did not affect the son's separate claim.

3. A witness must show that he knows about a general trade custom before he can be heard to testify in regard to it, and, in the absence of such showing, it is not error to sustain objections to questions calling for statements as to what is such custom.

4. Testimony directed to the individual custom of a witness is incompetent.

5. In an action for personal injuries sustained by coming in contact with a wire charged with electricity, a witness testified to examining the wire and its fastenings. *Held*, that it was not error on cross-examination to strike out an affirmative answer to an inquiry as to whether the wire was fastened to the insulator in the usual way. Such would be the presumption, in the absence of any evidence.

6. In an action for personal injuries to an eight-year-old infant occasioned by coming in contact with a live wire, where it appeared that both the father and mother knew of the wire before the injury, it is not error to sustain an objection to a question asked defendant, as to whether the mother objected to the defendant's placing the wire where he did.

7. In such case, it is not error to permit the father and mother to testify, against objections, that no one told them the wire was dangerous, and that they did not know that it might become dangerous. Such testimony is competent as bearing on the question of the parents' negligence.

8. Where an eight-year-old child was injured by coming in contact with a telephone wire, which had been negligently allowed to come in contact with heavily charged electric and trolley wires, evidence of an engineer employed by the light and railway company as to the voltage carried on its electric light and trolley wires; as to the effect of contact between wires;; as to the insulation of wires and the absence of guard wires;. and other facts tending to show the condition of the various; wires in the vicinity at the time of the injury, is admissible.

9. In an action for injuries from a telephone wire heavily charged with electricity by coming in contact with a live wire, where a witness had testified on direct examination that a certain

wire, maintained at a certain point, was covered with what was called "weather-proof" insulation, it was not error to exclude as improper cross-examination, questions as to whether additional insulation would not be safer; whether there would not be less danger in case of contact with another wire, and whether it was not customary to place guard wires over such wires to prevent contact.

10. Where, in an action for personal injuries, the court carefully defined proximate cause, and instructed the jury that in order to find that the negligence of the defendant was the proximate cause they must be satisfied of the necessary facts by a fair preponderance of the evidence, it is not error to refuse a requested instruction expressing simply the converse of such instruction.

11. In an action for personal injuries, where the court had already defined ordinary care as "such care as the mass or majority of mankind exercise under the same or similar circumstances," an instruction to the jury, in substance—that the defendant in breaking, coiling, and hanging the dead or uncharged wire (which caused the injury), is presumed to have known that it was an electric wire, and to have known and realized the dangerous properties of the electricity; that a higher degree of care was necessary when a thing on account of which an injury may be caused was a highly dangerous one; that dead electric wires may be enlivened or become charged with a current of electricity by coming in contact with a charged wire, and that in case any person touched or grasped such a wire it would, or might reasonably be expected to endanger the life or limbs of any person touching it—is not erroneous because it requires of defendant the exercise of more than ordinary care.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries suffered by the infant plaintiff by accidentally coming in contact with a telephone wire charged with a heavy current of electricity. There is very little dispute as to the facts. It appears by the evidence that the appellant, *Hake,* was a house mover by occupation, in Milwaukee; that about June 20, 1901, he was moving a building along Walker street, which is a street running east and west on the south side of

said city; that an unused telephone wire was stretched across Walker street, belonging to the Julius Andrae & Sons Company, a manufacturing corporation, which wire came from the north and crossed National avenue, another east and west street, one block north of Walker street; that on the north side of National avenue this wire was fastened to a shop building, and on the south side to a bracket upon a pole, and then proceeded along Barclay street south to Walker street; that as this wire crossed National avenue it hung a few inches above an electric light wire heavily charged with electricity, belonging to the Milwaukee Electric Railway & Light Company, protected only with a coating of weather insulation; that the plaintiff was a boy eight years of age, and lived with his parents on the west side of Barclay street, between National avenue and Walker street, and near the latter street, the aforesaid telephone wire passing over the house; that when *Hake* reached this wire the building broke the wire and *Hake* rolled up the north end for some distance in a coil on his arm, and hung the coil on a nail on the south side of the Nagle house, about three and one half to four feet from the ground, and close to a walk used by the family; that this coil remained so hung up till about June 28th, when the plaintiff accidentally touched it as he was standing near the house, and was very severely burned, and received injuries from which he suffered for a long time. It further appeared from the evidence that the wire had sagged down where it crossed National avenue until it rested on the electric light wire, and that the insulation of the latter wire had worn off, so that the telephone wire received the charge of electricity conveyed by the electric light wire. The Julius Andrae & Sons Company was also made defendant originally, but on the trial the action was dismissed as to it.

The jury returned the following special verdict:

"(1) Was *Arthur Nagle,* the plaintiff, injured on June 28, 1901, by receiving an electric shock from a telephone wire left by the defendant, *Hake,* hanging by the side of the house in

which he lived, on Barclay street, in the city of Milwaukee?
A. (by the court, by consent of counsel). Yes. (2) Was the
plaintiff's injury the natural and probable result of a want
of ordinary care on the part of the defendant, *William Hake,*
in breaking, coiling up, and hanging said wire by the side of
the plaintiff's house on or about June 21, 1901? A. Yes.
(3) Ought *William Hake,* as a man of ordinary intelligence
and prudence, in the performance of said act, to have fore-
seen, in the light of the attending circumstances, that he had
done something which would be likely to cause a personal in-
jury of some kind to a person near the age of the plaintiff?
A. Yes. (4) Ought the defendant, *Hake,* in the exercise of
ordinary care and prudence, to have foreseen, in the light of
the attending circumstances, that in cutting, breaking, coiling
up, and leaving the telephone wire as he did at the time and
place and under the attending circumstances, a personal in-
jury might probably and naturally be caused thereby to some
person? A. Yes. (5) Did want of ordinary care on the part
of the plaintiff's father contribute to produce the injury he
received? A. No. (6) Did want of ordinary care on the part
of plaintiff's mother contribute to produce the injury he re-
ceived? A. No. (7) What sum of money will compensate
the plaintiff for his injury? A. Twelve hundred and fifty
dollars; five hundred dollars to be deducted."

On this verdict the court rendered judgment for the plain-
tiff, and the defendant appeals.

For the appellant there was a brief by *McElroy & Esch-
weiler,* and oral argument by *F. C. Eschweiler.*

For the respondent there was a brief by *Hoyt, Doe, Um-
breit & Olwell,* and oral argument by *L. A. Olwell.*

WINSLOW, J. The assignments of error are very numer-
ous, and we shall not treat each one separately, but shall en-
deavor to classify them, and treat each class sufficiently in
detail to indicate the conclusions reached on all of the assign-
ments separately.

The alleged errors in refusing to grant a nonsuit, and in
refusing to direct a verdict, and in refusing to direct judg-
ment for the defendant notwithstanding the verdict, may all

be considered and disposed of together. It is said that there is no proof of actionable negligence, nor of proximate cause sufficient to take the case to the jury. With this we cannot agree. In the present day it is a well-known fact that our streets are full of electric wires crossing and recrossing each other in every direction, and that some of these wires, especially those transmitting light or heat or power, are charged with deadly currents; and it is also well known that when such a wire is naked, either from having lost its insulation or because necessarily in that condition, like a trolley wire, and comes in contact with another naked wire, the second wire also becomes charged with the current. It requires no college education to know these general facts. Any man actively participating in the affairs of the world, especially in a business which every day necessitates the removal and cutting of such wires, as did the defendant's business, must be presumed to know something of the dangers which lurk ever near the handling of such wires. From the very fact of these known dangers he must necessarily be charged with a higher degree of caution and diligence than one who is dealing with sticks and stones which can convey no such concealed death stroke. As has been said, the defendant was a house mover. His business required the examination and cutting or other disposal of electric wires almost daily. He necessarily must have known something of the dangers lurking about them, and the possibility of contact with a highly charged wire. We think it was certainly for the jury to say whether, in hanging this wire on the side of the Nagle house, within reach of a child, and leaving it there, he was guilty of a negligent act, and an act from which an injury to another was to be anticipated as a natural and probable result.

As stated in the statement of facts, the Julius Andrae & Sons Company was originally joined as defendant in this action on the ground that they were negligent in leaving the unused wire with no one to care for it in the public streets.

It appears that after the trial had proceeded for a day or two the plaintiff discontinued the action as to the Andrae & Sons Company, and the defendant, *Hake,* put the counsel for the Andrae Company on the stand, and examined him as to the circumstances and reasons of the discontinuance. From this examination it appeared that the Andrae & Sons Company paid the father of the infant plaintiff $500, and received a release from the father for the damages claimed *by him* against the Andrae & Sons Company. It further appeared that no release was given by any one on behalf of the plaintiff for damages suffered by him, nor was any money paid or agreement made by or on behalf of the plaintiff for such a release, but the understanding was that this action should be dismissed, as was in fact done. It further appeared that the dismissal was without prejudice, and that there was nothing to prevent another action being begun by the plaintiff against the Julius Andrae & Sons Company. The defendant, *Hake,* was allowed to amend his answer by pleading this alleged settlement as a discharge of all claims against him, and claimed that a verdict should be directed on this ground. The court, however, held that the evidence did not show a settlement of the plaintiff's claim against *Hake,* and instructed the jury that, if they found for the plaintiff, they should deduct the amount paid by the Andrae Company from the amount of the damages found, and this was in fact the course pursued by the jury.

We have been unable to see any error in this; at least any error prejudicial to the appellant. It was competent for the father to settle his own individual claim for damages on account of his son's disablement, and the fact that he does so does not affect the son's separate claim. The evidence did not show that any money was paid to the plaintiff, or to any one on his behalf, on account of his injury, or that any agreement of release, oral or written, was made by the plaintiff, or by any one on his behalf. The understanding that the present action was to be discontinued constituted no release.

It might have been commenced again at once, so far as appears by the evidence. We do not even reach the question of the effect of the release of one of two joint tort-feasors because there has been no attempt made by any one to release the plaintiff's cause of action against either defendant.

Upon the direct examination of the appellant as a witness in his own behalf he stated that the telephone and electric light companies each had a man at the building as he was moving it, who took care of the wires in the street in the way of the building, and either raised them or cut them and put them back again afterwards. He was then asked whether that was the usual custom in moving houses, and also whether, in moving houses, he ever looked after such wires himself; and objections were sustained to both questions. It has not been easy for us to see how the evidence would have been material in any event, but there are very satisfactory answers to the appellant's contention of error on these rulings. As to the first question, the witness had not shown that he knew anything about a general trade custom, and he must show that before he can be heard to testify; and as to the second question, it was only directed to the individual custom of the appellant himself, and this was very clearly incompetent.

A witness named Zarbock, a lineman employed by the Wisconsin Telephone Company, was called as a witness, and testified to examining the wire and its fastenings after the accident, and on cross-examination was asked whether it was fastened to the insulator on the south side of National avenue in the usual way, and an affirmative answer was stricken out. We have been unable to see what substantial bearing this answer would have in the case, or how the striking of it out was in any way prejudicial. The presumption would be, in the absence of any evidence, that it was fastened in the usual way, and this is as far as the answer went.

The appellant testified that Mrs. Nagle was present when he hung the wire on the house, and was then asked whether

she made objection at that time, and the question was ruled out on an objection. It had before appeared that both the father and mother knew that the wire was hanging there before the injury, the mother having testified that she saw *Hake* roll it up, and a few minutes later saw it hanging on the house. The fact of their knowledge of the whole situation is all that is really material on the question of their negligence, and this fact fully appeared. It would not have been made any stronger by showing that no objection was made. Both father and mother were allowed to testify, against objection, that no one told them the wire was dangerous, and that they did not know that it might become dangerous. We see no error in this ruling. If the negligence of the parents is to be imputed to the child (a question which is not decided) it was proper to ascertain what their knowledge was upon the subject of the danger lurking in this wire; not that their statement of ignorance is conclusive, but simply that it is proper to be shown in considering the question of negligence. They may have been negligently ignorant, but this was properly a question for the jury in view of all the facts.

An electrical engineer employed by the Electric Railway & Light Company was allowed, against objection, to answer a number of questions as to the voltage carried by the electric light and trolley wires in Milwaukee, as to the effect of contact between wires, as to the insulation of wires and the absence of guard wires, and other facts tending to show the condition of the various wires in the vicinity at the time of the accident. We are not able to understand how it can be reasonably claimed that there was error in these rulings. The facts thus shown throw light on the general situation and the dangers which were present. Whether the defendant should be charged with knowledge of such dangers, or with negligence in not knowing of them, was a question for the jury.

One of the plaintiff's witnesses who had been called to tes-

tify that the Electric Railway & Light Company maintained a wire on the north side of National avenue covered with what is called "weather proof" insulation was asked on cross-examination whether additional insulation would not be safer, whether there would not be less danger in case of contact with another wire, and whether it was not customary to place guard wires over such wires to prevent contact. Objections to these questions on the ground that they were not proper cross-examination were sustained, and, it seems to us, properly. They did not legitimately bear on anything upon which the witness had been examined in chief.

We shall spend no further time upon rulings on evidence. While there are some other rulings which are complained of, there are none of them of sufficient importance to justify detailed treatment.

The defendant asked that the following instruction be given to the jury, and assigns error on the refusal to give it:

"I further instruct you, that if you are satisfied by the evidence in this case that the acts of the defendant Julius Andrae & Sons Company in leaving the telephone wire in question suspended in the manner they did was the proximate cause, under the definition and instructions already given you on this subject, of the accident to the plaintiff, it is then your duty to answer the question as to whether the acts of the defendant *Hake* were the proximate cause in the negative.

Another instruction of like tenor, except that it referred to the acts of the Milwaukee Electric Railway & Light Company, was also asked and refused, and exception taken. It is probably sufficient to say with regard to these and several kindred instructions that they express simply the converse of a proposition fully given by the court. The court very carefully defined proximate cause, and charged the jury, in effect, that, in order to find that the negligence of *Hake* was the proximate cause they must be satisfied of the necessary facts by a fair preponderance of the evidence; *otherwise* they must answer the question whether the acts of *Hake* were the proximate

cause in the negative. Under the charge no doubt could have been left in the minds of the jury on this proposition, and, such being the fact, it was not error to refuse to give an instruction stating the converse of the proposition.

The court gave the following instruction:

"The defendant, *William Hake,* in breaking, coiling, and hanging the dead or uncharged wire on June 20, 1901, is presumed to have known that it was an electric wire, and to have known and realized the dangerous properties of electricity, and that a higher degree of care was necessary when a thing on account of which an injury may be caused was a highly dangerous one, and that dead electric wires may be enlivened or become charged with a current of electricity by coming in contact with a charged wire, and that in case any person touched or grasped such a wire it would, or might reasonably be expected to endanger the life or limbs of any person touching it."

The appellant claims this instruction to be erroneous because it requires the exercise of more than ordinary care. We do not so understand it, nor do we think the jury could have so understood it. The court had already defined ordinary care as "such care as the mass or majority of mankind exercise under the same or similar circumstances." The sentence now under consideration is elliptical, in that it does not in terms state with what the care required in handling electric wires is to be compared; but we think that none could mistake the idea intended, namely, the idea that greater care is required in handling such agencies which may be charged with mysterious and sudden death than in handling ordinary substances, and this as we have seen is a correct statement of the law.

We have covered all of the assignments of error which seem to us to be of sufficient significance to justify special treatment. We have carefully examined the other points made by appellant, but have found no errors.

*By the Court.*—Judgment affirmed.