Hayden v. Carey, 182 Wis. 530.

HAYDEN, Appellant, vs. CAREY, Respondent.

*October 16, 1923—February 12, 1924.*

*Electricity: Degree of care required in handling: Negligence: Maintenance of lines: Inspection after storm: Broken power wire: Contributory negligence: Trial: Failure of jury to answer questions.*

1. Failure of the jury to answer questions as to whether defendant was negligent in certain respects on submission of the case on a special verdict is tantamount to a negative answer to such questions. p. 535.
2. Electricity being an invisible power, which if handled without proper caution is inimical and dangerous to life and limb, a person using or dealing in it must exercise a high degree of care and watchfulness to prevent accident. p. 536.
3. Where electric wires become disarranged as the result of an unusual storm, it is the duty of the owner of an electric light plant to make immediate repairs; and after a storm of considerable vigor, although not of extraordinary violence, he is bound to anticipate that the system may be out of order, and is required to make an inspection thereof as soon as practicable. p. 537.

4. In an action for injuries suffered by one who came in contact with a broken charged wire following a storm, the question whether the defendant owner of the plant was negligent in not determining whether a break in its line had occurred by reason of the .storm, and in not shutting off the current to avoid an accident, is one for 'the jury; and the findings of the jury that the defendant was negligent as to the maintenance of the line, and that such negligence was the proximate cause of the injuries to the plaintiff, are *held* to be sustained by the evidence. p. 538.

5. One who had little or no knowledge of electricity or experience with electrical appliances or wires, and who was injured by coming in contact with a broken charged wire while removing broken branches and trees following a heavy storm, was not contributorily negligent. p. 539.

.APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This is an appeal by the plaintiff from a ·judgment in a personal injury action dismissing plaintiff's complaint with costs.

In the year 1915 the defendant constructed his lighting plant at the village of Wilmot, Kenosha county, and a distribution primary electric line designed to carry 2,300 volts from Wilmot to the village of Salem, a distance of about eight miles. About three miles north of Wilmot is located the so-called Camp Lake Hotel, a summer resort, and between the hotel and the lake there is a highway running north and south, and outside of the traveled portion of the highway, towards the east, the defendant constructed and maintained his poles and wires. The poles were set between 125 and 130 feet apart, were about twenty-five feet in length, being imbedded five feet in the ground, leaving about twenty feet above the surface, and on the cross-arms attached to the top of the poles and between twenty-four and twenty-eight inches apart, the two electric wires, made of what is known as No. 8 wire, uninsulated, were stretched. Not far from the hotel, and twenty-two feet northeast of the nearest electric light pole and fifteen feet east of the

wires, was located an apple tree twenty-five to thirty feet in height.

On the day of the accident, being the 7th of July, 1921, there were a number of heavy wind, rain, and electrical storms. The rain began to fall in the morning and continued intermittently until about 1 o'clock, at which time the storm became very violent, uprooting trees and breaking down branches. Between 2 and 3:30 o'clock p. m. the storm had largely subsided and the rainfall ceased. Between about 3:30 and 4:30 o'clock p. m. it again resumed considerable violence, being cyclonic in its nature. At about 2 o'clock in the afternoon it was observed that the apple tree above referred to had been broken down so that the trunk laid on the ground in an easterly and westerly direction. Between the fallen tree and the nearest electric light pole were located a number of branches which evidently had been broken down by the storm.

Plaintiff at the time of the accident had been employed in and about the hotel as a general laborer, and upon the cessation of the storm, between 4:30 and 5 o'clock p. m., he, together with one Bruel, contemplated removing the débris and broken branches and trees, and at the time of the happening of the injury was in the act of removing some of the branches located between the fallen apple tree and the nearest electric light pole, and while so engaged his hand came in contact with a live electric wire which had been broken down, resulting in severe personal injuries. It also appears that after the accident one end of the broken-down wire was found suspended along the side of the pole. There is no direct evidence in the case fixing the exact time when the wire was broken, nor was it established by the evidence of an eye-witness what caused the wire to break.

Plaintiff had but little knowledge of electricity and was unfamiliar with electrical apparatus and appliances, and his only experience with electric light wires was obtained in performing ordinary labor under the direction of a superior

in connecting the hotel with the transformers on the main line.

The line in question was constructed by the defendant with the aid of an expert, and proper authority for its construction was first obtained from the railroad commission, which body also, as it appears, approved of the equipment and the method of construction. The evidence further shows that from the time of the construction of the line up to the time of the happening of the accident, the line was maintained and operated substantially in its original form.

There was considerable evidence introduced on the trial for the purpose of showing that the line was not properly constructed and maintained, and, among other things, it was attempted to show that the defendant failed to erect and maintain a ground detector at Wilmot; that the poles in the vicinity of where the accident happened were not of sufficient height and were set too far apart; that the electric light wires were not insulated; that the branches of the apple tree had not sufficient clearance from the wires; that the wires themselves were not set far enough apart; that there were no signs indicating danger or high voltage and no guards on the poles; that there were no distinguishing marks on the poles to differentiate them from telephone poles; that while there were five lines emanating from the power station, only one of them was supplied with a so-called circuit breaker, and that such equipment was insufficient to properly indicate trouble on the lines.

The case was submitted to the jury upon a special verdict, the questions and answers being as follows:

"(1) Did the defendant fail to use ordinary care in the
　"(a) Construction of his line?　A.
　"(b) Operation of his line?　A.
　"(c) Maintenance of his line?　A. Yes.
　"(d) Care of his line?　A.
"(2) If you answer either (a), (b), (c), or (d) of question 1 'Yes,' then answer this question: Was such fail-

ure to use ordinary care the proximate cause of plaintiff's injuries? *A.* Yes.

"(3) Did any want of ordinary care on the part of the plaintiff proximately contribute to cause his injuries? *A.* No.

"(4) What sum of money will reasonably compensate the plaintiff for his injuries in question? *A.* $4,000."

Upon the rendition of the verdict the plaintiff moved for judgment thereon, and the defendant moved to change the answers of the jury to the questions of the special verdict and for judgment upon the answers as so changed, and also for judgment notwithstanding the verdict. Thereupon the court rendered the following decision:

"It was my opinion at the conclusion of the trial, and now is, that the evidence does not justify the finding that the defendant is chargeable with any neglect of duty causing plaintiff's injury as a natural and probable result under such circumstances that the defendant as a person of ordinary intelligence and. prudence ought reasonably to have anticipated injury to another in consequence thereof. . . ."

Plaintiff's motion for judgment was thereupon denied, and on motion of the defendant judgment was ordered in his favor, dismissing plaintiff's complaint with costs; and upon the entry of such judgment this appeal was taken. Further facts will appear in the opinion.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* and *Kenneth P. Grubb,* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb* and *Mr. Doe.*

For the respondent there was a brief by *Freeman & Bendinger* of Milwaukee, and oral argument by *Henry J. Bendinger.*

The following opinion was filed November 13, 1923:

DOERFLER, J.    The break in the wire was not discovered until the time of the accident, and while there was no evi-

dence of an eye-witness establishing the cause of such break, nevertheless we are of the opinion that sufficient facts had been proven from which the jury could readily infer that the apple tree in falling struck the wire, breaking it, and causing it to rest, when the accident occurred, upon the broken branches located between the trunk of the tree and the nearest electric light pole. The broken end of the wire through which the power was transmitted, which caused the injury, was approximately of sufficient length to enable it to rest upon the branches referred to, and when the branches were removed the contact of the wire with the branches was released, explaining the position in which the wire was suspended after the accident.

The various grounds of negligence referred to in the foregoing statement of facts, and others, were submitted, on proper evidence, to the jury; and the jury by its answer to the first question of the special verdict found as defendant's sole negligence the failure to properly maintain his electric line. The jury having failed to answer subdivisions (a), (b), and (d) of the first question of the verdict, such failure is tantamount to a negative answer in each of these particulars. Therefore we must conclude that the effect of this verdict results in an acquittal of the defendant of negligence in all respects excepting only with reference to the one where negligence was affirmatively found. The evidence also is undisputed that at the time of the accident the line was substantially in the same condition, with the same equipment and appliances, as it was in at the time of its construction in the year 1915, and that at all times it was operated in the same manner. This leaves for our consideration solely the following questions: 1. Was there any credible evidence in the case supporting and sustaining the jury's answer to the question as to negligence in the maintenance of the line? 2. Assuming that the jury's answer to subdivision (c) of the first question is properly sustained by

the evidence, was such negligence the proximate cause of the injury? 3. Was the plaintiff guilty of negligence which proximately contributed to his injuries?

Electricity is an invisible power which, if handled without proper precaution, is inimical and dangerous to life and limb. Therefore it was held in *Nagle v. Hake,* 123 Wis. 256, 101 N. W. 409, that for the prevention of accidents by electricity it is necessary that a high degree of watchfulness and care be exercised. See, also, *Lomoe v. Superior W., L. & P. Co.* 147 Wis. 5, 14, 132 N. W. 623.

In 29 Cyc. 425, it is said:

"This duty [meaning the duty to exercise proper care] may also arise out of circumstances; and this is especially true where a person is using or dealing with a highly dangerous thing which, unless managed with the greatest care, is calculated to cause injury to bystanders, where an owner has reason to apprehend danger owing to the peculiar situation of his property and its openness to accidents."

And on page 428 it is said:

"The greater the risk or danger, the greater must be the care. What is ordinary care in a case of extraordinary danger would be extraordinary care in a case of ordinary danger."

It will appear from the evidence that on the day of the accident a heavy storm raged during a large portion of the day in the locality of this line. The rain fell during a great portion of the day, and during certain periods the storm became violent and cyclonic. At 11 o'clock in the morning the storm raged violently, and at about 1 o'clock in the afternoon it reached such force as to cause the breaking down of trees and branches. The storm in a degree resembled a hurricane and was accompanied by violent lightning and electrical display. At about 2 o'clock in the afternoon it was observed that the apple tree in question had been broken down. From about 2 o'clock until about 3:30 o'clock p. m. there was a marked cessation of the storm, after which

it again continued to rage with great force until about 4:30 o'clock in the afternoon. The accident happened shortly before 5 o'clock p. m.

It therefore appears to us, in view of the jury's verdict and of the evidence in the case, that we must be primarily concerned with the negligence of the defendant, if any, in failing to ascertain timely the fact that a charged wire had been broken down prior to the time of the accident, and in failing to shut off the current timely so as to avoid the happening of an accident like the one complained of.

Where wires become disarranged as the result of an unusual storm it is the duty of the owner of an electric light plant to make immediate repairs, and after a storm of any considerable vigor, although it is not of extraordinary violence, an owner is bound to anticipate that its system may be out of order, and it is incumbent upon him to make an immediate inspection thereof as soon as practicable. Curtis, Electricity, sec. 476.

Where an electric telephone wire had been burned in the evening preceding the accident, causing the ends of the wire to be suspended from the poles, and where a person came in contact with it the following morning, it was held that the company was negligent in not making an inspection during the night. *Brown v. Consolidated L., P. & I. Co.* 137 Mo. App. 718, 109 S. W. 1032.

The doctrines and rules thus laid down by the text-books and authorities above referred to seem to be well fortified and established by the decisions in this country and have a tendency to protect human life and limb.

There is also evidence in the case that it is customary for electric companies, after a violent storm, to make immediate inspection of their lines. The evidence also shows that it would be feasible and practicable for the company to make proper inquiries by the use of the telephone in order to ascertain whether its line is in proper order. While the storm raged during the greater portion of the time intervening be-

tween 11 o'clock a. m. and 4:30 o'clock p. m. on the day of
the accident, nevertheless there was a period of one and one-
half hours where it substantially subsided.   The telephone
is a modern convenience, and would have been a great aid in
ascertaining breakages in the system and interruptions in
transmission.   None of the means available were resorted
to.   At 4 o'clock p. m. a telephone message was received by
the defendant from a station known as Powers Lake, a line
connected with the Wilmot-Salem line, but nothing was
done to shut off the current until after the accident in the
instant case had happened.

In view of what has been said, we conclude that whether
or not on the day of the accident the defendant properly
maintained his line or exercised the necessary degree of care
to determine whether a break in the line had occurred by rea-
son of the storm presented a proper jury issue; and the jury
having answered the question of maintenance adversely to
the defendant, such answer cannot be set aside.

As to question 2, whether the negligence of the defendant
was the proximate cause of the injury, little need be said.
It being the duty of the defendant under the circumstances
to make an inspection and investigation of the condition of
his line, and the jury having found the defendant guilty of
negligence as to his maintenance of the line, the answer to
the question of proximate cause is not only warranted but
sustained by the evidence.

As to question 3, which refers to the alleged contribu-
tory negligence of the plaintiff, the record shows affirma-
tively that the plaintiff had little or no knowledge of elec-
tricity, and no experience with electric appliances or wires,
excepting that as an ordinary laborer or helper he assisted
in constructing wires from the main line to the hotel.
While it appears from the evidence that the plaintiff had
knowledge at the time of the accident that the apple tree
had been broken down by the storm, he was not aware of
the existence of the broken electric wire; and even assuming

that he knew of such wire, it cannot be said that he was conscious of the danger existing on coming in contact with such wire. The answer of the jury is therefore sustained by the uncontradicted evidence in the case.

We therefore conclude that the court erred in ordering judgment for the defendant on motion of his counsel, and that judgment should have been granted in plaintiff's favor on the special verdict.

*By the Court.*—Judgment reversed, and the cause is remanded with directions to enter judgment in favor of the plaintiff in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on February 12, 1924.