DANSBERY, Respondent, vs. NORTHERN STATES POWER COMPANY, Appellant.

*December 9, 1925—January 12, 1926.*

*Electricity: Transmission lines: Degree of care required: Inspection of wires: Notice of dangerous condition: Question for jury: Permitting wires to come in contact with guy wire of smokestack: Proximate cause: Excessive damages: Electric shock and burns on hand: Permanent injury.*

1. A public-service corporation, in generating electricity and transmitting it by means of its system, is required to exercise a high degree of care and caution in order to prevent injury; and such care must be commensurate to the danger.   p. 591.
2. Such duty does not cease when the company has properly constructed its system, but requires reasonable care with respect to its supervision and inspection.   p. 591.
    so erected or strung that one is likely to fall upon or come in contact with the other, thereby producing possible destructive consequences, each party must exercise due care and diligence to abate such condition, and is liable for negligence in allowing such condition to remain, without regard to which one primarily caused it.   p. 591.
3. Where wires maintained concurrently by different parties are

4. In an action against a power company to recover damages for injuries from electric shock, the question whether defendant was given notice of the dangerous condition of the wires is for the jury. p. 592.

5. The defendant power company is liable for plaintiff's entire damages, although the electricity which caused his injury was transmitted from its wire through a guy wire of the smokestack of a laundry company which was plaintiff's employer, the employer not being a party to the action, and the plaintiff not being able to make such employer a party, as both he and it were under the workmen's compensation act. p. 593.

6. An award of $8,000 for a severe electric shock and second-degree burns to the fingers of plaintiff's right hand, while deemed rather large, is *held* not excessive, where it appeared that plaintiff at the time of the trial was forty-four years of age, and prior to the accident which destroyed his ability to pursue his calling as a stationary engineer he was able-bodied and healthy. p. 594.

APPEAL from a judgment of the circuit court for La Crosse county: R. S. COWIE, Circuit Judge. *Affirmed.*

The action is one brought to recover damages for personal injuries. The plaintiff was employed by the La Crosse Steam Laundry Company, a corporation, as a stationary engineer and fireman in its plant in the city of La Crosse, and both employee and employer were under the workmen's compensation act. The Laundry Company was insured by the Wisconsin Mutual Liability Company; and, compensation having been paid, the common-law cause of action was duly assigned to the plaintiff, who thereafter commenced this action against the defendant.

The action was tried before a jury, and by the special verdict submitted to it it found: (1) that the plaintiff was injured by contact with a guy wire leading to the smokestack of the La Crosse Steam Laundry; (2) that such guy wire was charged with electric current of the defendant company, due to the contact of the secondary service wire of the defendant company with another guy wire connected with such smokestack; (3) that the defendant was wanting

Dansbery v. Northern States Power Co. 188 Wis. 586.

in the exercise of ordinary care in permitting its secondary service wire to remain in contact with the guy wire of the smokestack of the La Crosse Steam Laundry Company at the time of the accident; (4) that such want of ordinary care on the part of the defendant was the proximate cause of plaintiff's injury; (5) that such condition existed for such a length of time that the defendant company and its officers and agents, in the exercise of ordinary care and prudence, ought to have known of and remedied the same before the plaintiff's injury; (6) that the defendant company had actual notice that there was a leak in its current, in the immediate vicinity of the accident, a sufficient time prior thereto to have enabled it, in the exercise of reasonable diligence, to have remedied the same; (7) that such leak was a proximate cause of plaintiff's injury; (8) that the plaintiff was not wanting in the exercise of ordinary care which contributed to his injury; and (9) that the plaintiff, by reason of the accident, sustained damages in the sum of $8,719.92.

On the rendition of the verdict the usual motions were made by counsel, and judgment was thereupon ordered in plaintiff's favor for the sum of $8,000, together with costs and disbursements, and judgment being entered accordingly, the defendant brings this appeal. Further facts will be stated in the opinion.

For the appellant there was a brief by *Lees & Bunge* of La Crosse, and oral argument by *Andrew Lees.*

For the respondent there was a brief by *F. E. Withrow,* and oral argument by *Mr. Withrow* and *Mr. James D. Petersen,* both of La Crosse.

DOERFLER, J. The defendant company maintained a service wire which extended from one of its transformers across the building of the Laundry Company and conveyed an electric current of 440 volts. The Laundry Company

maintained a number of guy wires which were attached to the smokestack, on which was located an iron collar, and one of these guy wires, extended over the service wire, was fastened to the collar, and prior to the accident had sagged so that it came in contact with the service wire. An examination of this service wire after the accident disclosed that the insulation at or about the point of contact with the guy wire was worn off. Attached to the smokestack and leading to the rear door of the Laundry Company was another guy wire, the ends of which were used by the Laundry Company in fastening said rear door. Extending. from this smokestack there were also several guy wires, which were anchored in the walls of the building of the Creasey Corporation. It appears from the evidence that the electricity escaping from the service wire was transmitted to the guy wire with which it came in contact, was then transmitted to the iron collar on the smokestack, and thence into the wires which were anchored in the building of the Creasey Corporation and the wire which led to the door above mentioned of the Laundry Company. After the accident, when the guy wire which had sagged was raised, no further trouble was experienced either at the Laundry Company's building or at that of the Creasey Corporation.

Some two weeks or more prior to the accident a patron of the Creasey Corporation sustained an electric shock when opening a door of its building. One Rothermel, the manager of the Creasey Corporation, testified that several weeks prior to the accident the walls of the Creasey Corporation were charged with electricity, and that he telephoned to the service department of the defendant company notifying it of such fact, and that several days thereafter he again notified the defendant, directing his notice to the trouble department of the company, but that no attention was paid to these complaints. Here it must be mentioned that the

employees of the defendant company in charge of the trouble and service departments testified that they had no knowledge whatsoever of the company having received any such notice.

On the 9th day of March, 1922, at the hour of about 12 o'clock noon, the plaintiff, in attempting to fasten the door in the rear of the Laundry Company's building, used, as had been his custom theretofore, the end of the guy wire which led to the smokestack, and in so doing received a severe electric shock, and burns known as second-degree burns, to the fingers of his right hand. It also appears that the plaintiff, prior to the accident, had no knowledge whatsoever of electric currents having been transmitted through any of these guy wires.

At the time of the trial the plaintiff was forty-four years of age. Before the accident he was a strong, healthy, and able-bodied man, weighing about 170 to 175 pounds; that owing to the injuries and shock he became partially unconscious, and did not realize fully his surroundings until the following morning while he was at the hospital; that he was under a physician's care almost continuously for a month and a half; that he became very nervous and irritable, and had an aversion to people in general; that the injuries inflicted caused him severe pain; that he lost considerable sleep, and that his sleep became intermittent, and that he would awaken with frightful dreams; that on the 16th day of May he attempted to resume his work with the Laundry Company, but was able to perform only part of his duties, and that after the lapse of about two weeks and five days he was obliged to quit. When resuming work for the Laundry Company his back would give out and he did not have the full use of his right arm. He felt dizziness in his head during nearly the entire time. On the 2d day of July of the same year he worked in the Milwaukee Railway yards as a night watchman and continued in this employment for a period of five weeks, and there-

after was unemployed until 1924, from which time ,on he has found employment with the Kroner Hardware Company of La Crosse, where he worked continuously, with the exception of a few days, until the day of the trial. While working for the Laundry Company he received a weekly wage of $25, and at the Kroner Hardware Company his wage was $16 a week. At the time of the trial he testified that his appetite was poor; that he did not sleep well; that his memory was seriously affected; that he had lost considerable weight; and that he suffered from dizzy spells.

Public-service companies like the defendant, generating electricity and transmitting the same by means of its system, in the course of its public service, are required to exercise a high degree of care and caution in order to prevent injury. The degree of care must be commensurate to the danger. As is said in 29 Cyc. 428: "The greater the risk or danger, the greater must be the care. What is ordinary care in a case of extraordinary danger would be extraordinary care in the case of ordinary danger." See, also, *Hayden v. Carey,* 182 Wis. 530, 536, 196 N. W. 218.

When a company has properly constructed its system and strung its service wires, its duty does not cease, but it must thereafter exercise reasonable care with respect to supervision and inspection. According to the testimony of the man who had charge of the trouble department of the defendant company, this service wire had not been inspected for a period of over six months prior to the accident. But it is claimed by the defendant's counsel that the proximate cause of the injury was not the negligence of the defendant but that of the Laundry Company. We believe the correct doctrine is laid down in 20 Corp. Jur. 357, where it is said:

"Where wires maintained concurrently by different parties are so erected or strung that one is likely to fall upon or come in contact with the other, thereby producing possible destructive consequences, each of them must exercise

due care and diligence to abate such dangerous condition, and is liable for negligence in allowing such condition to remain without regard to which one primarily caused it."

See, also, *Wilbert v. Sheboygan L., P. & R. Co.* 129 Wis. 1, 106 N. W. 1058; *Lomoe v. Superior W., L. & P. Co.* 147 Wis. 5, 132 N. W. 623; *Ryan v. Oshkosh G. L. Co.* 138 Wis. 466, 120 N. W. 264; *Nagel v. Hake,* 123 Wis. 256, 101 N. W. 409.

In this case it appears that ample notice was given, and that the defendant failed to heed such notice and to rectify the trouble. While those in charge of the service and trouble departments of the defendant company denied having received notice, the question of whether actual notice was given presented a clear jury question, and this question was answered adversely to the defendant. The only case cited and relied upon on this branch of the case by the defendant is *Magee v. New York Tel. Co.* 213 N. Y. 232, 107 N. E. 493. In that case the guy wire of the telephone company sagged down on the feed wire of the railway company. The court in rendering its decision held:

"The railway company could not control the location of the guy wire. So far as the record discloses, when the railway company erected its poles and placed the feed wire thereon there were no wires of the telephone company with which it could come in contact. The accident was caused by the act of the telephone company in placing the guy wire in proximity to the feed wire. . . . Had not the guy wire been erected by the telephone company, even assuming that the insulation of the feed wire had been worn off as claimed by plaintiff, the plaintiff's intestate would have been free from danger of accident. *There is no evidence how the insulation wore off, nor how long the defect had existed.* The most plausible hypothesis suggests that it had existed only a short time."

The facts in the *Magee Case* disclose that they are materially different from those involved in the instant case. In that case there was no evidence to show how the insula-

tion wore off.  In the instant case the sagging of the guy wire and its constant contact with the service wire leads to the inference that such contact was the cause of the wearing off of the insulation on the service wire.  In the *Magee Case* there was no evidence to show the length of time during which the sagging continued, nor was there evidence of notice to the defendant.  In the instant case the service wire and the guy wire had not been inspected for a period of upwards of six months.  Furthermore, sufficient, adequate, timely notice was given to the defendant company, during which time it could have made an inspection, detected the cause of the trouble, and repaired it, and the jury so found.

Defendant's counsel suggest that the defendant should not be held liable in the instant case for more than the sum of $4,000, being one half of the amount of the judgment. We can find no authority to warrant our acceding to this suggestion.  The Laundry Company was not made a party to this action.  The plaintiff, of course, under the statute, could not make the Laundry Company a party, because both the Laundry Company and he were under the compensation act.

In his complaint the plaintiff prayed for judgment in the sum of $8,000.  The jury awarded damages somewhat in excess of that amount.  After the rendition of the verdict the court reduced the award to $8,000, to conform with the prayer of the complaint.  No complaint was made by defendant's counsel on account of the action of the court in this respect.  But it is seriously argued that the damages are excessive, and that a new trial should have been awarded or the damages substantially reduced.  While the testimony of the plaintiff's experts would not justify an award of $8,000, nevertheless Dr. A. Gunderson, the expert for the defendant, in answer to a hypothetical question which included substantially all of the material facts that appear from plaintiff's evidence, testified that, assuming the truth

of all the matters contained in such hypothetical question, he was of the opinion that plaintiff's condition as it existed at the time of the trial would continue, and that he would never recover. The award of damages in a case like the instant one is particularly within the province of the jury. The injuries received were of a serious nature and were extremely painful. It is reasonably certain that the symptoms will continue during the remainder of plaintiff's life. Plaintiff at the time of the trial was forty-four years of age. Prior to the accident he was an able-bodied, healthy man, and had never suffered a serious injury or endured any protracted illness. His ability to pursue his calling as a stationary engineer and to earn the wages paid to those engaged in such calling has been destroyed. The nervous symptoms and the effect which the injury had upon his memory are extremely distressing. While we deem the award rather large, we cannot say it is excessive. The jury and the court saw the plaintiff and heard the evidence, and both passed on the subject of damages. The judgment, therefore, ought not to be disturbed.

*By the Court.*—Judgment affirmed.