Currie, J.
 

 The defendants raise the following issues before this court:
 

 (1) Is Algiers entitled to the benefit of the emergency rule as a matter of law, in view of the jury’s failure to find that he was negligent with respect to position on the highway, thus requiring that the jury’s finding that he was
 
 *476
 
 causally negligent with respect to management and control be set aside ?
 

 (2) Do certain rulings of the trial court during the conduct of the trial constitute prejudicial error so as to require that there be a new trial of the Rude action if the defendants do not prevail upon the first issue ?
 

 (3) Are the damages excessive?
 

 The Negligence Issue.
 

 This issue with respect to Algiers’ negligence only relates to the Rude action.
 

 At the place of collision the pavement portion of Highway 12 was 20 feet, eight inches wide and the shoulders were from three to four feet wide. The highway is comparatively level at such point with good visibility in either direction. Snow had been falling for some time prior to the accident and the pavement was very slippery. As one witness put it, the pavement was “like a skating rink.”
 

 The only two eyewitnesses to the accident who testified as to how it happened were Miss McCourt and Algiers. The accident caused Miss Rude to sustain retrograde amnesia so that she was unable to recall any facts of the events leading up to the collision.
 

 Miss McCourt’s version of how the collision occurred is as follows: She was proceeding at a speed of 40 miles per hour in her own traffic lane when she saw the headlights of the Algiers car suddenly turn across the center line of the pavement. Then the two cars came together in her traffic lane. She estimated the distance away of the Algiers vehicle when it suddenly changed course and came across the center line as being only two car lengths.
 

 Algiers’ account of how the accident happened is as follows : He was driving at a speed of 25 miles per hour. When the McCourt car came within a half block of his automobile or a little less, it seemed to drift across the center line and
 
 *477
 
 into his lane of traffic and the two vehicles hit head on. He described such drifting as “gradual” and that the McCourt car continued with its course parallel to the center line. Algiers thinks he took his foot off the accelerator. He did not apply his brakes or attempt to turn to the right but stayed where he was, hoping the McCourt car would get back onto its own side of the road. He gave two versions of where his automobile was just prior to the impact. One was that he was in the south traffic lane on the pavement. The other was that he had his right wheels off on the right shoulder. Several times prior to the accident that evening he had driven with his right wheels on the gravel shoulder. In a prior adverse examination, in which Algiers testified to having his right wheels on such shoulder when the McCourt car was only 10 to 30 yards away, he was asked this question and gave this answer:
 

 “Q.
 
 And to the best of your knowledge, did you change that position?
 
 A.
 
 I don’t know.”
 

 The place of impact could not be determined from any marks on the pavement. Algiers testified that after the accident the front ends of both cars were in close proximity to each other and in Algiers’ traffic lane, which was the south lane. Miss McCourt gave no testimony with respect to the position of the vehicles after the accident. Shortly afterward a car coming from the east driven by one Scott crashed into the rear of the McCourt automobile causing the position of both it and the Algiers car to be changed before the investigating officer arrived. However, one Williams arrived at the scene just prior to Scott. Williams testified that the McCourt and Algiers cars were then blocking both traffic lanes, with one sitting in each lane. According to him, the McCourt car was. facing northwesterly and the Algiers car southwesterly. Scott’s testimony is of little assistance in placing the location of the vehicles before he
 
 *478
 
 struck the McCourt car. Thus it is apparent that under either Algiers’ or Williams’ version as to the position of the vehicles immediately after the first accident, both were on the pavement.
 

 The failure of the jury to answer the questions of the verdict, which inquired as to whether Algiers was negligent with respect to position on the highway and lookout, “is tantamount to a negative answer in each of these particulars.”
 
 Hayden v. Carey
 
 (1924), 182 Wis. 530, 535, 196 N. W. 218;
 
 Wanke v. Kreul
 
 (1937), 225 Wis. 618, 620, 275 N. W. 361; 53 Am. Jur., Trial, p. 748, sec. 1079; and Anno. 76 A. L. R. 1137, 1143
 
 et seq.
 
 Therefore, there being no evidence that Algiers got over in the wrong traffic lane as a result of any nonnegligent act or accident, we must accept as a fact that the accident happened on his side of the pavement because of the failure of the jury to find him negligent with respect to his position on the highway. For the same reason we must assume that he kept a proper lookout.
 

 Under the testimony the maximum distance that the McCourt and Algiers cars were apart, when Algiers first saw the McCourt vehicle crossing the center line, was one half a city block or approximately 150 feet. The two cars were traveling at a combined speed of 65 miles per hour or approximately
 
 97 y2
 
 feet per second. Thus Algiers had less than two seconds in which to act. If the testimony were undisputed that he was then in his, the south, traffic lane of the pavement, and not partly off on the shoulder, we would be compelled to find that he was then confronted with an emergency as a matter of law.
 
 Martell v. Klingman,
 
 ante, p. 296, 105 N. W. (2d) 446;
 
 Papacosta v. Papacosta
 
 (1957), 2 Wis. (2d) 175, 85 N. W. (2d) 790; and
 
 Clark v. Mutual Automobile Ins. Co.
 
 (1957), 1 Wis. (2d) 357, 83 N. W. (2d) 873. If so confronted, then he could not be found negligent because he failed to take that action to avoid the collision which hindsight after the event might indicate
 
 *479
 
 would have been the right step to have taken to achieve such result.
 

 However, we deem Algiers’ testimony, that he had the right wheels of his car off on the south shoulder at a time when the McCourt car was not more than 90 feet away, to be sufficient to present a jury issue as to whether he was negligent with respect to management and control. The jury could well conclude from the position of the two cars after the accident, both being entirely on the pavement, that Algiers must have turned left so as to bring all four wheels of his automobile onto the pavement immediately prior to the impact. Miss McCourt’s testimony that the Algiers car did make a sudden turn to the left supports such a conclusion. Nowhere in his testimony does he claim that he turned in either direction in order to avoid the collision. Therefore, the jury could infer that he made such turn voluntarily, and not because faced with an emergency, when the lights of the approaching McCourt car indicated its close proximity. The question of law here presented is an exceedingly close one. This is because, if Algiers had testified that he had turned to the left just before the impact in order to avoid the collision, the emergency doctrine would be applicable and he could not be found guilty of negligent management and control.
 

 ' Counsel for the plaintiff Rude advance the argument that, because Algiers testified that the McCourt car was gradually drifting across the pavement center line at a point when it was at the most but a half block away, this renders the emergency doctrine inapplicable. We see no merit in such argument. It is the forward speed of both vehicles, together with the distance they are apart when the one begins to veer into the other lane, which are the determining factors. Whether the veering into the wrong lane was gradual or sharp might be material on the issue of the lookout of the other driver but we are not here concerned with such issue.
 

 
 *480
 

 Alleged Errors in Conduct of Trial.
 

 Counsel for the defendants during the course of trial offered in evidence the pleadings of Miss Rude in her prior action in federal court in which she had sued Miss McCourt for her damages sustained in the accident. Such pleadings were not signed or verified by Miss Rude but only by Mr. Brynelson, her attorney. The trial court sustained an objection to the offer, and such pleadings in the federal court action were excluded.
 

 The defendants ground their contention, that such ruling of the trial court was error, upon the premise that such federal court pleadings of Miss Rude constituted an admission against interest. In support of such contention they cite the holding of this court in
 
 Schultz v. Culbertson
 
 (1905), 125 Wis. 169, 171, 103 N. W. 234, wherein it was stated:
 

 “Such answer filed by his authorized attorney, and adopted by the client by proceeding to and through trial thereon, was an admission, conclusive only so long as the pleading remained unamended, but still evidentiary even after substitution of another answer.”
 

 In her pleadings in the federal court action Miss Rude charged Miss McCourt with negligence with respect to position on the highway, lookout, and management and control. By the statements made by defendants’ counsel in the offer of proof made by defendants with respect to the court’s ruling excluding such pleadings in the federal court action, it is apparent that they were being offered as substantive evidence in the nature of admissions against interest to establish that Miss McCourt was negligent in the respects charged. We fail to see how such allegations constitute an admission against interest in the instant cases. The issue in the trial below of the Rude action is the negligence of Algiers, and Miss McCourt’s negligence was expressly determined not to be an issue by our decision in the prior appeal. The fact that in such trial Miss Rude was attempting to establish that
 
 *481
 
 Algiers was on the wrong side of the highway is not inconsistent with her position taken in federal court that Miss McCourt was on her wrong side of the pavement. It is possible that they both may have been on the wrong side.
 

 If such pleadings had been offered merely to establish the fact that in the federal court action Miss Rude had only sued Miss McCourt and not Algiers a much-closer question would have been presented. This is because Miss Rude’s suing of Algiers in the circuit court action is inconsistent with her prior act of suing Miss McCourt alone. The defendants would be entitled to get such fact to the jury but the trial court would have some discretion over the form which the proof took to establish such fact. Such inconsistency of position would have some relevancy when the jury came to weigh evidence and decide credibility of witnesses on the issue of Algiers’ negligence.
 

 The federal court pleadings were not offered to impeach any testimony of Miss Rude, nor would they be entitled to be received for such purpose. This is because Miss Rude did not sign or verify them, and, by reason of retrograde amnesia, she was prevented from giving any testimony on the negligence issue.
 

 A second ruling of the trial court which the defendants attack was the court’s refusal to permit the defendants to call Attorney Brynelson as a witness. The purpose for which the defendants attempted to call him as a witness is apparent from the following quoted portion of the record:
 

 “The Court: I would like to ask you, Mr. Skemp, for what purpose you call Mr. Brynelson?
 

 “Mr. Skemp: I am calling him to ask him whether or not he is associated with Mr. Herrick; if he did not call Mr. Algiers as a witness and have him sworn as a witness in his own behalf [in Miss Rude’s federal court action] and thereby vouched for his testimony.
 

 “The Court: I don’t know if any attorney vouches for any testimony. . . .
 

 
 *482
 
 “Mr. Skemp: I want to know if he didn’t frame that complaint in federal court, in which he alleged Miss McCourt invaded the lane of travel. I want this in the record, invaded the lane of travel of Algiers.
 

 “The Court: The complaint is based on hearsay, conclusions.
 

 “Mr. Skemp: And it constitutes, in my opinion, a judicial admission. It has never been withdrawn.”
 

 The trial court properly refused to permit Attorney Brynelson to be called and questioned about the allegation in Miss Rude’s federal court complaint which charged Miss McCourt with having invaded Algiers’ lane of traffic. For the reason already stated it was not an admission against interest on the part of Miss Rude.
 

 The defendants’ brief cites no authorities in support of their contention that a lawyer who calls a person as a witness during the course of trial vouches for the veracity of such witness. We are not prepared at this time to so hold, although we deem it to be within the province of the jury whether or not to draw such an inference. Therefore, we are of the opinion that the defendants were entitled to bring out the fact that during the course of trial Algiers had been called as a witness for Miss Rude in the federal court action against Miss McCourt and that he had testified in her behalf. However, it was not necessary to call opposing counsel as a witness to establish such fact as it could have been brought out by a simple question put to Algiers. The practice of attempting to call opposing counsel as a witness during the course of trial to establish some fact that can be readily proved in a different manner should be discouraged. We hold that under the circumstances here presented it was not prejudicial error for the trial court to have refused to permit Attorney Brynelson to be called as a witness.
 

 The defendants further urge that the trial court committed prejudicial error in refusing to permit defendants’ counsel
 
 *483
 
 to call Miss McCourt as an adverse witness on the liability issue. However, it was only in the Rude action that there was any issue of negligence presented, as the only issue to be tried in the McCourt action was that of damages. Therefore, the trial court properly refused to permit Miss McCourt to be called as an adverse witness with respect to the negligence issue. At the point in the trial when such ruling was made, Miss McCourt had already testified fully on the negligence issue as a witness for Miss Rude and had been subjected to a thorough cross-examination by counsel for the defendants. The defendants made no offer of proof as to what additional fact or facts they expected to adduce as a result of calling Miss McCourt as an adverse witness at this point in the trial. Without such offer of proof it is difficult to determine how prejudice could have resulted to the defendants from the court’s ruling.
 

 Rude Damages.
 

 At the time of accident Miss Rude was thirty-one years of age. She sustained very severe injuries from the accident but fortunately made a good recovery from them with the result that a scar to her forehead and a thickening at the point of juncture of the left clavicle and sternum are the only permanent impairments sustained. The sole medical witness who testified was Dr. Beebe of Eau Claire, who treated her during her hospital confinement. Dr. Beebe stated that this thickening where the left clavicle joins the sternum has resulted in no functional impairment.
 

 The scar extends through both eyebrows and across the bridge of the nose. Dr. Beebe testified that at the time of trial five years after the accident there was still some swelling along the line of suturing over the right eye.
 

 Miss Rude testified that there is a place on her left forehead where she experiences itching and irritation. However, there was no medical testimony that this was permanent,
 
 *484
 
 and without such medical testimony it cannot be considered as of a permanent nature for the purpose of awarding damages.
 
 Diemel v. Weirich
 
 (1953), 264 Wis. 265, 58 N. W. (2d) 651. Plowever, the jury was entitled to consider the discomfort this condition had caused her during the five years preceding trial.
 

 There is no question but that Miss Rude sustained severe pain for some days after the accident. In addition to the extensive cut to the forehead across both eyebrows, she had lacerated wounds to a thumb and her right leg, a fracture of both bones of the right arm, a fractured left clavicle and a dislocation of it where it joins the sternum, several fractured ribs, and many bruises about the head, body, arms, and legs. She was rendered unconscious and sustained considerable loss of blood. Dr. Beebe described the pain from the dislocation of the left clavicle from the sternum as acute. She also suffered from nausea and vomiting, rapid heartbeat, and pleurisy. For a time she was given oxygen and intravenous feedings. She was confined to the hospital at Eau Claire from November 24th to December 23d and left the hospital with her arm in a cast.
 

 The jury awarded $9,000 for her personal injuries, including wage loss. She was unable to resume her teaching duties until February 1st and her loss of salary was approximately $900. Therefore, the amount awarded for the scar and pain and suffering is $8,100. This seems high but it has had the approval of the trial court. In passing here upon the claimed excessiveness of the damages, a great deal depends upon how noticeable is the extensive scar to this young lady’s forehead. The trial court saw such scar and therefore was in a much-better position to evaluate it than are we.
 

 The damages awarded, while high, are not such as to shock the conscience of this court. Therefore, we do not find them to be excessive.
 

 
 *485
 

 McCourt Damages.
 

 Miss McCourt’s injuries consisted of a cut one and one-half inches long on the chin and another two and one-half inches long on the left knee that required suturing, the temporary loosening of three teeth, and bruises and abrasions distributed over her body. There was considerable bleeding. She had a severe headache for some time, and was confined to the hospital three days. It took nine days in all in which to convalesce before resuming teaching. She had considerable pain during the first week of teaching. Up until time of trial five years after the accident, the left knee still cramps up when held in one position for a considerable length of time. The only permanent injuries are the scars to the chin and knee.
 

 Again, while the damages awarded seem high, a majority of the court are not prepared to hold that they are excessive.
 

 By the Court.-
 
 — -Judgments affirmed.